[Civ. No. 46217. Second Dist., Div. Five. Dec. 20, 1976.]

THOMAS A. ANDERSON et al., Plaintiffs and Appellants, v.
CITY OF THOUSAND OAKS, Defendant and Respondent.

**COUNSEL**

Cohen, Cearnal, England, Whitfield & Osborne, Thomas B. Osborne and Charles D. Christopher for Plaintiffs and Appellants.

Don Dewberry and Donald C. Fesler for Defendant and Respondent.

**OPINION**

·**STEPHENS, Acting P. J.**—Appellants Anderson and Clouse brought this action for the wrongful death of their son when the automobile in

which he was riding failed to negotiate the curve of a road designed, constructed, and maintained by respondent City of Thousand Oaks. After responsive pleadings were filed, the city moved for summary judgment on the basis of several grounds of public entity immunity. Summary judgment was granted and the action was dismissed, whereupon appellant filed this appeal.

*Facts*

On the evening of November 4, 1972, appellants' son, Dennis Michael Anderson, was riding as a passenger in an automobile which was proceeding northbound along Lynn Road, approaching a section of the road which curves to the left in a 65 degree arc before reaching the Ventura Freeway. The automobile failed to negotiate the curve at a point near the Green Meadow Drive intersection and ran off the road, causing the death of both Anderson and the driver of the car. At the time of this occurrence, Lynn Road had been open to the motoring public for just over one month, but the City of Thousand Oaks had not set up any caution signs or roadway striping of a type to warn northbound drivers proceeding at the legal rate of 65 miles per hour of the upcoming curve.

The wrongful death action subsequently filed by appellants set forth three alternate grounds of liability as to respondent city: (1) negligent maintenance of the roadway in a dangerous condition, insofar as the speed limit was 65 miles per hour while the design speed of the curve was 45 miles per hour; (2) negligent failure to provide speed or warning signs for the curve, which thereby rendered it dangerous at speeds in excess of 45 miles per hour; (3) the city was on notice of the dangerous condition of the roadway by virtue of a meeting of the Ventura County Traffic Safety Council on October 18, 1972.

In response to appellants' complaint, respondent denied liability on all counts, set up numerous affirmative defenses, and then moved for summary judgment based upon the following three defenses: (1) design immunity for improvements of public property constructed pursuant to an approved plan (Gov. Code, § 830.6); (2) lack of actual or constructive notice of any dangerous condition, inasmuch as the road was only recently built and was adequately inspected both in design and construction (Gov. Code, §§ 835, 835.2); and (3) sign placement immunity, where the failure to provide regulatory control signals did not constitute a condition endangering the safe flow of traffic (Gov. Code,

§§ 830.4, 830.8). In support of its motion for summary judgment, the respondent included its counsel resolutions, design plans for the roadway, accident computer printouts, and declarations by its director of public works and assistant traffic engineer. Appellants opposed the motion with a declaration from a registered civil engineer stating that the Lynn Road curve had a design speed of 45 miles per hour, which, coupled with the safety factor built into the road, yielded a maximum safe speed of 55 miles per hour. It was further declared that no signs, striping, or other indicators warned a northbound motorist that he would have difficulty negotiating the curve ahead at speeds in excess of 55 miles per hour. Finally, the expert concluded that, given the foregoing two factors, the roadway was in a dangerous condition when traveled in excess of 55 miles per hour, but within the 65 mile per hour zoned speed limit.

The trial court, without specifying the grounds of its decision, granted the respondent's motion for summary judgment. We find, however, that such a ruling was improper since appellants' proof controverting respondent's claims of immunity is sufficient to raise triable issues of fact.

## Discussion

The granting of a motion for summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent's affidavits do not show such facts as may be deemed by the court sufficient to present a triable issue. (Code Civ. Proc., § 437c; *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) To prevail, therefore, the moving party's affidavits must set forth facts establishing every element necessary to sustain a judgment in his favor before defects in counteraffidavits need be examined. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].) On the other hand, it is axiomatic that counteraffidavits are construed liberally and need only set forth evidentiary facts supporting merely a possible cause of action (*Orser* v. *George,* 252 Cal.App.2d 660, 669 [60 Cal.Rptr. 708]), since the purpose of the summary judgment procedure is to determine if issues exist to be tried, rather than to try the issues (*Buffalo Arms, Inc.* v. *Remler Co.,* 179 Cal.App.2d 700, 703 [4 Cal.Rptr. 103]). Examining the affidavits and counteraffidavits in the case at bench in light of these established rules, we must determine whether

respondent has met its burden of establishing its immunity from liability for injury caused by the allegedly dangerous condition of its property.

Government Code section 835 provides for the liability of a public entity for injury caused by the dangerous condition of its public property (1) which is *created* by the negligence of a public employee acting within the scope of his employment (Gov. Code, § 835, subd. (a)), or (2) which may not be directly attributable to the public entity, but which *goes uncorrected* after the entity has notice of the condition in time to take corrective measures (Gov. Code, § 835, subd. (b)).[1] Respondent claims summary judgment was proper as it is shielded from liability under the first prong of section 835 by either design immunity or by sign placement immunity, and is exempt from liability under the second prong because, as a matter of law, it had no notice of any dangerous condition along Lynn Road. We now proceed to discuss the sufficiency of respondent's proof as to each of these claimed immunities.

I

Design immunity, the first possible ground for the granting of the summary judgment, is an affirmative defense to liability for the dangerous condition of public property and as such it must be pleaded and proved by the defendant public entity. (*Hilts* v. *County of Solano,* 265 Cal.App.2d 161, 175 [71 Cal.Rptr. 275].) ■ Under Government Code section 830.6,[2] three basic elements must be established in order to

[1]Government Code, section 835 provides:
"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[2]Section 830.6 sets forth the immunity for an approved plan as follows: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

claim this defense: first, a causal relationship between the plan and the accident; second, discretionary approval of the plan prior to construction; third, substantial evidence supporting the reasonableness of the design. (*De La Rosa* v. *City of San Bernardino,* 16 Cal.App.3d 739, 748 [94 Cal.Rptr. 175]; *Johnston* v. *County of Yolo,* 274 Cal.App.2d 46, 51-52 [79 Cal.Rptr. 33].) Because the existence of the first element is undisputed, we begin with a discussion of the latter two elements.

In examining the sufficiency of respondent's proof as to the elements of prior approval and reasonableness of approval of the Lynn Road plan, it will be helpful to bear in mind the rationale underlying design immunity. Basically, this defense is predicated upon the concept of separation of powers—that is, the judicial branch through court or jury should not review the discretionary decisions of legislative or executive bodies, to avoid the danger of "impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." (*Cameron* v. *State of California,* 7 Cal.3d 318, 326 [102 Cal.Rptr. 305, 497 P.2d 777], quoting from 4 Cal. Law Revision Com. Rep. (1963) p. 823; see Van Alstyne, Cal. Government Tort Liability (1964) § 6.32.) Additionally, judicial economy underlies design immunity—forbidding a jury from reweighing the same factors considered by the governmental entity which approved the design.[3] (*Baldwin* v. *State of California,* 6 Cal.3d 424, 432, fn. 7 [99 Cal.Rptr. 145, 491 P.2d 1121].)

Respondent's showing of a detailed plan, drawn up by a competent engineering firm, and approved by the city council in the exercise of its discretionary authority,[4] is certainly persuasive evidence of

---

[3]Other jurisdictions also view the immunity as a matter of competence, relegating decisions as to the sufficiency and adequacy of highway design to competent engineers, rather than to a jury of untrained laymen. (E.g., *Cumberland* v. *Turney,* 177 Md. 297 [9 A.2d 561, 569]; see 45 A.L.R.3d 886-887.)

[4]The issue was not raised (and it is thereby conceded) that the Thousand Oaks City Council, which approved the road improvement plans, was the proper body to exercise the discretionary authority referred to in section 830.6. Such approval, and the subsequent construction, took place (according to respondent's affidavits) in the following order: First, special counsel was employed for the formation of an assessment district for the improvements. Then, on September 10, 1970, the city contracted with McIntyre & Quiros, civil engineers, to provide plans and specifications for the construction at a cost not in excess of $31,000. The plans so provided were adopted on May 18, 1971, and readopted on November 16, 1971, since the project had to be reinstated for financing reasons. Construction was awarded to A. C. Construction Company, and on September 15, 1972, Lynn Road was open to traffic. On October 5, 1972, the road was formally approved as being in compliance with plans and specifications.

both elements of prior approval and reasonableness for purposes of the design immunity defense. Appellants attempt to take this case outside the reach of design immunity, however, by characterizing the dangerous condition of the roadway as one which was not comprehended within the plan or design. In support of this position they cite *Cameron* v. *State of California*, 7 Cal.3d 318 [102 Cal.Rptr. 305, 497 P.2d 777]. We disagree with appellants' characterization, and with the applicability of *Cameron* to the instant facts.

In *Cameron* v. *State of California*, *supra*, the California Supreme Court found that the design immunity defense did not apply in the case of an unevenly banked S-curve, where the plans for the curve failed to specify the degree of banking. In so holding the court reasoned that there would be no examination of a discretionary decision in contravention of the design immunity policy because no such decision had been proven. (7 Cal.3d at p. 326.) Implicit in the court's reasoning was the assumption that the omission of banking or "superelevation" figures from the plans indicated a failure to consider that element of design, and therefore the uneven banking of the road, as constructed, could not have been a *design*-created defect.

Appellants analogize the omission of warning signs preceding the curve in the instant case to the omission of superelevation figures in the *Cameron* case, claiming that this defect in the new roadway cannot be classified as a design defect. In our view, however, such an omission cannot as clearly be classified as a *failure to consider* an element of design. First, in such a comprehensive design as the one submitted to respondent, it is less likely that the omission of some feature commonly associated with a roadway was not a conscious design choice. Second, the banking of a curve is more intimately associated with sound design than is the inclusion of warning indicators appurtenant to the curve. Speed reduction signs, and other indicators warning of an approaching curve, may not be necessary in many cases in which the curve is adequately visible to approaching motorists, and where it may safely be negotiated at the existing speed limit. Finally, there was mention of signing in these plans, at least with regard to approaching street intersections, indicating inferentially, at least, that other forms of signing had been considered and rejected. Thus to avoid the risk of interfering with a discretionary decision of the planning body, we are not willing to conclude that the absence of warning signs prior to the Lynn Road curve was not an element of the design. Since we have found that all the elements of

design immunity were proven through respondent's affidavits, the respondent must be deemed to be immune from liability for the creation of a dangerous condition under subdivision (a) of section 835 of the Government Code.

## II

█ In spite of respondent's immunity for a defectively designed roadway, a second independent ground of liability under subdivision (b) of Government Code section 835 exists for its failure to warn of the dangerous condition if it had actual or constructive notice of such a condition. (See *Cameron* v. *State of California, supra,* 7 Cal.3d 318, 329.) Respondent claims that its affidavits conclusively establish the absence of any actual or constructive notice of the dangerous condition. Yet, a closer examination of the record compels the conclusion that at least a triable issue of fact exists with respect to notice.

We do not dispute that respondent's affidavits negate the fact that it was on actual notice of the danger posed by the Lynn Road curve. According to the respondent's director of public works, he had not discovered any danger through investigation, nor had any been revealed by virtue of complaints or traffic accidents. We do, however, dispute respondent's bare assertion that it was not on *constructive notice* of a dangerous condition in the new roadway.

A public entity is on constructive notice of a dangerous condition "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." (Gov. Code, § 835.2, subd. (b).) It is undisputed that the new roadway existed without a speed zone from the time it was first opened to traffic until the accident occurred approximately six weeks later. Yet, the respondent as the party moving for summary judgment has failed to establish that the allegedly dangerous condition created thereby was not of such an obvious *character* that it could not have been discovered and remedied in that period of time.

The very fact that respondent through its Director of Public Works requested an investigation as to the necessity of posting a speed limit along the new section of Lynn Road indicates that there was a

recognition of two facts: first, that the speed along the roadway was presently unrestricted, or subject only to the then-existing legal limit of 65 miles per hour;[5] second, that there might be some necessity to limit this speed in order to ensure that the curve be safely negotiated. Simply because the requested investigation conducted by the Ventura County Traffic Safety Council failed to disclose any reason for imposing such a speed restriction does not mean, however, that the respondent cannot fairly be charged with notice of the dangerous character of the curve, given the permissible speed of 65 miles per hour. (See Van Alstyne, Cal. Government Tort Liability (Cont. Ed. Bar 1964) p. 210.) The respondent has still failed to show that a *reasonable* inspection would not have revealed the dangerous condition. (See *State of California* v. *Superior Court* (1968) 263 Cal.App.2d 396, 400 [69 Cal.Rptr. 683].) To this end, respondent has failed to set forth the exact nature of the investigation made by the Ventura County Traffic Safety Council. Moreover, the council simply concluded that a speed zone installation was "premature," not that it was unnecessary. If the physical factors which rendered the curve unsafe at the legal speed limit were readily apparent to anyone attempting to negotiate the curve at that speed, then the defect certainly was of such a character as to charge the city with notice. Furthermore, if from the plans themselves it might readily be ascertained that the curve had a design speed of 45 miles per hour then certainly respondent, as designer, must be charged with knowledge of that fact. Accordingly, because respondent has failed to demonstrate the hidden or inconspicuous nature of the defect in the roadway rendering it unsafe at speeds in excess of 55 miles per hour, it therefore cannot exempt itself from liability for failure to warn of a known dangerous condition under subdivision (b) of Government Code section 835.

---

[5] Prior to the enactment of the temporary 55-mile-per-hour speed limit in 1973, section 22349 of the Vehicle Code established 65 miles per hour as the maximum allowable highway speed. This maximum speed applied to local public roadways and streets as well as state highways. (See Veh. Code, § 360.) If a local public roadway were unposted, as was the case here, only two basic limitations could have mandated a speed lower than the maximum: first, the basic speed law, which proscribes any speed faster than is reasonable under the circumstances (Veh. Code, § 22350), and second, prima facie speed limits, such as the 25 mile per hour limit established for any business or residential district (Veh. Code, § 22352). Neither respondent's affidavits nor the record affirmatively establish the presence of either limitation along the newly constructed portion of Lynn Road at the time of the accident. While respondents may be able to produce evidence at trial establishing the existence of a residential zone as defined in section 515 of the Vehicle Code, or the existence of a "reasonable" speed under the basic speed law, much lower than the 55 miles per hour safe speed around the Lynn Road curve, we cannot conclude on the basis of the showing made here, that the permissible speed was anything less than 65 miles per hour. For the purposes of this opinion, therefore, we are assuming that the legal rate along Lynn Road was 65 miles per hour.

## III

■ Sign placement immunity under Government Code sections 830.4[6] and 830.8[7] is the third possible ground for the granting of a summary judgment in favor of the City of Thousand Oaks. The broad discretion allowed a public entity in the placement of road control signs is limited, however, by the requirement that there be adequate warning of dangerous conditions not reasonably apparent to motorists. (Gov. Code, § 830.8.) Consequently, a public entity is not shielded from liability under subdivision (b) of section 835 for the maintenance of a dangerous condition in its property, if it fails to post signs in circumstances constituting a trap to the motorist. (See *Bakity* v. *County of Riverside,* 12 Cal.App.3d 24, 31 [90 Cal.Rptr. 541]; *Teall* v. *City of Cudahy,* 60 Cal.2d 431, 433-434 [34 Cal.Rptr. 869, 386 P.2d 493].) Appellants' averments in their counteraffidavit as to the speed parameters of the Lynn Road curve seem to illustrate the kind of trap contemplated by section 830.8. Accepting these averments as true, it cannot be said that appellants do not state a triable issue of fact as to the dangerousness of the curved section of Lynn Road given an allowable speed of 65 miles per hour. Without any warnings prior to the curve, even a cautious driver might well commit himself to the curve at a speed 10 miles per hour in excess of the maximum safe speed, posing the grave danger of either losing control of his automobile or of leaving the roadway. We conclude, therefore, that the trial court erred if it granted summary judgment in respondent's favor on the basis of sign placement immunity.

The order is reversed with a direction to vacate the order granting a summary judgment. Costs to appellants.

Ashby, J., and Hastings, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 17, 1977.

---

[6]Section 830.4 provides as follows: "A condition is not a dangerous condition within the meaning of this chapter *merely because* of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." (Italics added.)

[7]Section 830.8 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."