[No. B102909. Second Dist., Div. Five. Sept. 17, 1997.]

ARTHUR GRENIER, Plaintiff and Appellant, v.
CITY OF IRWINDALE, Defendant and Respondent.

934

COUNSEL

Michael J. Piuze and John Keiser for Plaintiff and Appellant.

Knopfler & Robertson, Scott Haith and Janice M. Michaels for Defendant and Respondent.

OPINION

GRIGNON, J.—Plaintiff and appellant Arthur Grenier appeals from the summary judgment entered in favor of defendant and respondent City of Irwindale in this action for dangerous condition of public property with respect to a flooded street. We conclude the city has established the defense of design immunity under Government Code section 830.6. A public entity defendant establishes design immunity for purposes of summary judgment when it presents substantial evidence of the reasonableness of the design, even if conflicting evidence of the design's reasonableness is presented by the plaintiff. Moreover, design immunity, once acquired, is not lost until the public entity has notice of a change in physical conditions which has created a dangerous condition. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

On June 5, 1993, Amelia McDonald was driving northbound on Buena Vista Street in the City of Irwindale (the City). It was raining and the street was flooded to some extent. McDonald lost control of her vehicle. McDonald's car jumped the curb and hit a wheelbarrow, propelling it into Grenier, who had been working on private property on the east side of the street. Grenier suffered physical injuries as a result of the accident.

*Allegations of the Complaint*

On March 18, 1994, Grenier brought this action against, among others, McDonald and the City.[1] Grenier alleged the City was liable for the dangerous condition of Buena Vista Street. Specifically, Grenier alleged the City negligently designed the drainage facilities for Buena Vista Street "in such a manner that when there was rainfall in the general area, the roadway where the accident occurred would flood." Grenier also alleged that the flooding created a hidden hazard or trap about which the City negligently failed to warn.

---

[1]Grenier's wife Glenda was also a plaintiff, stating a cause of action for loss of consortium. Her action is still pending.

The City answered the complaint, raising several affirmative defenses, including design immunity under Government Code section 830.6.

*The City's Motion for Summary Judgment*

On January 10, 1996, the City moved for summary judgment on the theory of design immunity.[2] The City conceded that it owned and maintained Buena Vista Street. The City contended that any flaw in the street's design which caused flooding was the result of a design approved by a City employee reasonably exercising discretionary authority, thus establishing design immunity.

In support of its motion, the City relied on the deposition of Carlos Alvarado. Alvarado had been the City's designated city engineer since 1978. Prior to 1986, Buena Vista Street had been an unimproved road, consisting of one lane in each direction with no curbs or gutters. In 1986, Alvarado was directed to develop the street to "more current standards." Plans were prepared by Don Saguchi, a civil engineer. After Saguchi had prepared the plans, Alvarado reviewed them. Alvarado believed the plans were reasonable and adequate, and approved them. Buena Vista Street was improved in conformity with the plans. The improved street consisted of two lanes in each direction with sidewalks and drainage facilities.

Six "Flooded During Storm" signs were placed on Buena Vista Street in the late 1980's. In 1991, on the recommendation of Ronald Hobbs, a consultant for the City, two further signs were added before a curve in the road.[3]

*Grenier's Opposition*

Grenier opposed the motion on three bases. First, Grenier contended the City had not shown a causal relationship between the 1986 improvements and the dangerous condition. In particular, he argued that the City had not

---

[2]The City also sought summary judgment on the theory of weather immunity, under Government Code section 831. That section provides, in pertinent part, that no public entity "is liable for an injury caused by the effect on the use of streets and highways of weather conditions as such. . . . For the purpose of this section, the effect on the use of streets and highways of weather conditions includes the effect of fog, wind, rain, flood, ice or snow." The City does not pursue this theory on appeal.

[3]According to Hobbs's deposition, he recommended the additional signs based on the presence of the signs already there. "[B]ased on my approach . . . , there was an indication that there was probably an area where it became flooded during storms because of the numerous signs as you approach . . . . Since this seemed to be a part of the concern, I recommended that additional signing be installed in advance of the curve area which is before you approach."

shown the flooding was the result of a discretionary decision based upon an evaluation of design alternatives. Second, Grenier argued the design was patently unreasonable. Third, he argued that any design immunity the City may have acquired had been lost because the City had actual notice that the improvements were creating a dangerous condition.

With respect to the design being patently unreasonable, Grenier relied on the one-page declaration of his expert, Peter Pountney. Pountney opined that the improvements "called for a concrete curb and gutter system with inadequate longitudinal slope for the expected flow of water" and "called for an inadequate number of storm water drainage curb inlets." Grenier also relied on further excerpts from Alvarado's deposition, in which Alvarado admitted that, based on what he now knew, he would make changes to Buena Vista Street to improve its driveability.

On the issue of the City's notice that the improvements were insufficient, Grenier relied on the fact the City had posted flood warning signs, so therefore must have known that Buena Vista Street flooded. Grenier also relied on "reports of prior accidents" produced by the City in discovery. There were three reports: one for the accident in which Grenier was injured; a second for another accident occurring the same day as Grenier's; and a third for an accident in 1991.

*The City's Reply*

The City objected to Pountney's declaration as conclusory and without foundation.

*The Trial Court's Initial Ruling*

At the hearing on February 16, 1996, the trial court indicated its intention to sustain the objection to Pountney's declaration and grant the summary judgment motion. However, the trial court granted a short continuance for Grenier to file a supplemental declaration, and the City to file a supplemental reply declaration.

*Grenier's Supplemental Declaration*

Grenier submitted the supplemental declaration of Pountney. Pountney declared that he had reviewed the engineering construction drawings which had been approved by Alvarado. "These drawings depict the street and storm drainage improvements of Buena Vista [Street]." Based on data included in the drawings, Pountney computed the "nominal cross slope" at various

points on the street. He also noted the "longitudinal gutter slope" identified on the drawings. Pountney compared these figures with minimal allowances established by Los Angeles County, California Department of Transportation, Orange County, and San Diego County and concluded they were insufficient. He stated the flat slopes, combined with the lack of sufficient storm water runoff inlets, resulted in a condition that did not meet unflooded travel lane requirements. He concluded that "it was not reasonable to approve such a patently deficient plan."

Finally, he opined that the addition of warning signs in 1991 was insufficient, as "[i]t was already clear by 1991 that warning signs were not adequate to prevent accidents, or eliminate the hazards, at this location."

*The City's Supplemental Declaration*

In reply, the City submitted the declaration of Lawrence R. Wlezien, a civil engineer. Wlezien engaged in a point-by-point refutation of Pountney's supplemental declaration. First, he declared that the cross slopes and longitudinal slopes set forth in agency standards are not minimum requirements, but rather guidelines to be used where achievable, based on existing field conditions. Second, he opined that the design for Buena Vista Street exceeded the guidelines in many respects, and in others was so close to the guidelines as to make the differences irrelevant. In sum, Wlezien concluded the design "was reasonable" and the City's approval of the design was also reasonable.

Additionally, he concluded the use of warning signs was entirely appropriate and within the standard of care.

*The Trial Court's Ruling*

On March 6, 1996, the trial court issued its notice of ruling. The trial court concluded the City had provided substantial evidence that the design approved was reasonable, and therefore granted the motion. Judgment was entered on April 9, 1996. Grenier filed a timely notice of appeal.[4]

---

[4]The notice of appeal was also filed on behalf of Glenda Grenier. As she has suffered no adverse judgment, there is nothing for her to appeal, and counsel for the Greniers has conceded her action is still pending. On May 2, 1996, McDonald filed a notice of joinder in the appeal, as the judgment purports to be adverse to her on her cross-complaint against the City. Grenier's counsel has represented, by letter, that all cross-complaints, including McDonald's, were dismissed in December 1995, which is at odds with both the inclusion of McDonald in the summary judgment in favor of the City and McDonald's joinder in the appeal, both in 1996. In any event, McDonald has informed this court that she will not be

## Discussion

*Design Immunity*

█ Grenier contends the City never acquired design immunity for the flooding of Buena Vista Street because: (1) the flooding was not the result of a discretionary design decision of the City based upon an evaluation of design alternatives; and (2) the design was unreasonable.

A public entity may be liable for negligently creating an injury-producing dangerous condition of its property or for failing to remedy a dangerous condition despite having had notice and sufficient time to protect against it. (Gov. Code, § 835.) However, there is no liability "for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or some other body or employee exercising discretionary authority to give such approval . . . , if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design . . . or (b) a reasonable legislative body or other body or employee could have approved the plan or design." (Gov. Code, § 830.6.)

█ "The rationale behind design immunity 'is to prevent a jury from simply reweighing the same factors considered by the governmental entity which approved the design.' [Citation.] ' "[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." ' " (*Cameron* v. *State of California* (1972) 7 Cal.3d 318, 326 [102 Cal.Rptr. 305, 497 P.2d 777].)

█ A public entity claiming design immunity must show the existence of three elements, " '(1) [a] causal relationship between the plan and the accident; (2) discretionary approval of the plan prior to construction; [and] (3) substantial evidence supporting the reasonableness of the design.' " (*Higgins* v. *State of California* (1997) 54 Cal.App.4th 177, 185 [62 Cal.Rptr.2d 459]; *Hefner* v. *County of Sacramento* (1988) 197 Cal.App.3d 1007, 1013-1014 [243 Cal.Rptr. 291].)

Design immunity is an affirmative defense often raised on motion for summary judgment or nonsuit, enabling the trial court to find the defense

filing a brief in this matter. Thus, to the extent Glenda Grenier and McDonald are appellants, we deem their appeals to have been abandoned.

established as a matter of law. (*Johnston* v. *County of Yolo* (1969) 274 Cal.App.2d 46, 56 [79 Cal.Rptr. 33].) The first two elements, causation and discretionary approval, may only be resolved as issues of law if the facts are undisputed. (*Flournoy* v. *State of California* (1969) 275 Cal.App.2d 806, 813 [80 Cal.Rptr. 485].) The third element, substantial evidence of reasonableness, requires only substantial evidence, that is, evidence of solid value which reasonably inspires confidence. (*Hefner* v. *County of Sacramento, supra*, 197 Cal.App.3d at p. 1014.)[5] We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted.[6] (*Higgins* v. *State of California, supra*, 54 Cal.App.4th at p. 186; *Compton* v. *City of Santee* (1993) 12 Cal.App.4th 591, 596-597 [15 Cal.Rptr.2d 660].)

*Causation and Discretionary Approval*

 The first element, a causal relationship between the plan and the accident, requires proof that the alleged design defect was responsible for the accident, as opposed to some other cause. (*Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 570, 575 [136 Cal.Rptr. 751] [causation was negated by evidence showing poor maintenance and clogging of the drainage system, not merely the system's design, caused the flooding].) The second element, discretionary approval prior to construction, "simply means approval in advance of construction by the legislative body or officer exercising discretionary authority." (*Ramirez* v. *City of Redondo Beach, supra*, 192 Cal.App.3d 515, 526.) A detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval. (*Ibid.*) Design immunity does not immunize decisions which were not made.

---

[5]Some authority has suggested that substantial evidence is sufficient to establish the first two elements of the defense. (E.g., *Higgins* v. *State of California, supra*, 54 Cal.App.4th at pp. 185-186.) Yet the language of the statute "suggests that the substantial evidence test may apply only to the reasonableness element, and that a jury must decide the remaining elements of design immunity on the basis of the preponderance of the evidence." (Fisher, "*Design Immunity for Public Entities*" (1991) 28 San Diego L.Rev. 241, 243; see *Bay Area Rapid Transit Dist.* v. *Superior Court* (1996) 46 Cal.App.4th 476, 482 [53 Cal.Rptr.2d 906] [summary judgment proper in design immunity case when plaintiff failed to raise a triable issue of fact as to causation].)

[6]Government Code section 830.6 provides for immunity "if the trial or appellate court determines that there is any substantial evidence upon the basis of which" a reasonable public employee could have approved the design. Whether our task is an independent review of the record searching for substantial evidence that the design was reasonable, or a review for substantial evidence to support the trial court's *finding* of the existence of substantial evidence that the design was reasonable (see *Ramirez* v. *City of Redondo Beach* (1987) 192 Cal.App.3d 515, 526 [237 Cal.Rptr. 505] [choosing the former formulation]) is immaterial. In either event, if we find substantial evidence of reasonableness in the record, the third element of design immunity is established.

(*Cameron* v. *State of California, supra,* 7 Cal.3d at p. 326.) Thus, the injury-producing feature must have been a part of the plan approved by the governmental entity.[7] (*Higgins* v. *State of California, supra,* 54 Cal.App.4th at p. 185.) The immunity only applies to "a design-caused" accident. (*Flournoy* v. *State of California, supra,* 275 Cal.App.2d at p. 812.)

■ Grenier alleged that Buena Vista Street flooded because of the inadequate drainage provided by the plan approved by the City. Grenier's claim relies on features of the approved plan. It is undisputed that the cross slopes, longitudinal slopes, and runoff inlets relied on by Grenier's expert to establish a design defect were part of the written plans approved by Alvarado on behalf of the City. The plans were prepared by Saguchi, a civil engineer, and approved by Alvarado, the city engineer, after review. These undisputed facts establish both causation and discretionary approval.

*Substantial Evidence of Reasonableness of Design*

■ The third element of design immunity, substantial evidence of reasonableness of design, requires only substantial evidence. "[A]s long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity. The statute does not require that property be perfectly designed, only that it be given a design which is reasonable under the circumstances." (*Ramirez* v. *City of Redondo Beach, supra,* 192 Cal.App.3d at p. 525.) Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element. (*Hefner* v. *County of Sacramento, supra,* 197 Cal.App.3d at p. 1015.) Approval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness. (*Higgins* v. *State of California, supra,* 54 Cal.App.4th at p. 187.) That a plaintiff's expert may disagree does not create a triable issue of fact. (*Id.* at p. 186; *Compton* v. *City of Santee, supra,* 12 Cal.App.4th at pp. 596-597.)

■ This element is satisfied by Alvarado's approval of Saguchi's plans. Moreover, Wlezien's declaration, concluding the plans were reasonable even after considering all of Pountney's criticisms, more than satisfies the element of substantial evidence of reasonableness. The existence of Pountney's differing opinion does not undermine the substantial evidence of reasonableness provided by the City. Summary judgment on the ground of design

---

[7]It is not clear whether this issue relates to the element of causation or discretionary approval. (Compare *Higgins* v. *State of California, supra,* 54 Cal.App.4th at p. 185; *Flournoy* v. *State of California, supra,* 275 Cal.App.2d at p. 813 [causation] with *Mozzetti* v. *City of Brisbane, supra,* 67 Cal.App.3d at p. 574; *Anderson* v. *City of Thousand Oaks* (1976) 65 Cal.App.3d 82, 89-90 [135 Cal.Rptr. 127] [discretionary approval].) The distinction is academic. If the injury-producing element was not a part of the discretionarily approved design, immunity is defeated.

immunity cannot be defeated by the creation of evidentiary conflicts as to reasonableness. The City was therefore entitled to design immunity.

*Changed Conditions*

Grenier contends that even if the City initially acquired immunity for its design of Buena Vista Street, that immunity was lost when the City became aware that flooding of Buena Vista Street was a dangerous condition.

Design immunity does not necessarily continue in perpetuity; it may be lost under certain circumstances. In determining the circumstances giving rise to the loss of design immunity by a public entity, we review the case and statutory authority bearing on this topic.

As originally enacted, Government Code section 830.6 made no provision for the potential loss of design immunity, once acquired. When this question was first addressed by the courts, the Supreme Court determined that design immunity was perpetual. In 1967, the Supreme Court held that design immunity protected a governmental entity from liability for a defective design in perpetuity, regardless of any changed conditions. (*Becker* v. *Johnston* (1967) 67 Cal.2d 163, 172-173 [60 Cal.Rptr. 485, 430 P.2d 43]; *Cabell* v. *State of California* (1967) 67 Cal.2d 150, 153 [60 Cal.Rptr. 476, 430 P.2d 34, 34 A.L.R.3d 1154].) The Supreme Court held that a defective design is not actionable as long as it was reasonable when adopted, even though it may be wholly unreasonable under subsequent circumstances and conditions. (*Cabell* v. *State of California, supra,* 67 Cal.2d at p. 153.)

In 1969, the Law Revision Commission recommended amending Government Code section 830.6 to overrule *Becker* and *Cabell.* (Recommendation Relating to Sovereign Immunity, No. 10, Revisions of the Governmental Liability Act (Sept. 1969) 9 Cal. Law Revision Com. Rep. (1969) pp. 816-823.) The Law Revision Commission recommended renumbering Government Code section 830.6 as subdivision (a) and adding the following as subdivision (b):

"Nothing in subdivision (a) exonerates a public entity or public employee from liability for an injury caused by the plan or design of a construction of, or an improvement to, public property if the trial court determines that:

"(1) The plan or design actually created a dangerous condition at the time of the injury;

"(2) Prior to such injury and subsequent to the approval of the plan or design, or the standards therefor, other injuries had occurred which demonstrated that the plan or design resulted in the existence of a dangerous condition; and

"(3) The public entity or the public employee had knowledge that such other injuries had occurred a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (Recommendation Relating to Sovereign Immunity, No. 10, Revisions of the Governmental Liability Act (Sept. 1969) 9 Cal. Law Revision Com. Rep., *supra*, pp. 839-840.)

The Legislature did not adopt this recommendation. Instead, in 1972, the Supreme Court overruled *Becker* and *Cabell*. (*Baldwin* v. *State of California* (1972) 6 Cal.3d 424 [99 Cal.Rptr. 145, 491 P.2d 1121].) *Baldwin* involved a 1967 accident at an intersection designed in 1942. Plaintiff was waiting to make a left turn when he was struck from the rear by another vehicle. The road was not designed with a left-turn lane, so plaintiff had been stopped in a traffic lane when his vehicle was struck. (*Id.* at p. 427.) When the road was designed, there had been little development in the area and few vehicles made the left turn plaintiff had been attempting. (*Id.* at pp. 429.) In the interim, however, increased development led to a dramatic increase in traffic at the intersection, combined with an increase in collisions. The state had been repeatedly informed of the hazardous nature of the intersection under the circumstances and had received requests for remedial measures, but none were taken. (*Id.* at pp. 428-429.) The trial court had granted summary judgment because the road still conformed to the 1942 plans, which had been reasonable when made. (*Id.* at p. 430.) The Supreme Court reversed, concluding that immunity persists only as long as conditions have not changed. "Once the entity has notice that the plan or design, under changed physical conditions has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard." (*Id.* at p. 434, fn. omitted.) The Supreme Court repeatedly noted that the immunity terminated only when the design "in its actual operation under changed physical conditions" produced a dangerous condition. (*Id.* at p. 438.) The Supreme Court relied upon the Law Revision Commission's proposed 1969 amendment as supportive of its conclusion. However, the court recognized that the proposed amendment "would be even broader than our holding in the instant case." (*Id.* at p. 435.) *Baldwin*'s holding was limited to cases where the design became dangerous under changed physical conditions. (*Id.* at pp. 431, 438.)

In 1979, Government Code section 830.6 was amended by adding the following language concerning the loss of design immunity: "Notwithstanding notice that constructed or improved public property may no longer be in conformity with a plan or design . . . which reasonably could be approved by the legislative body or other body or employee, the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary

to allow such public property to be in conformity with a plan or design approved by the legislative body of the public entity or other body or employee." (Stats. 1979, ch. 481, § 1, p. 1638.)

The 1979 amendment is ambiguous. As one commentator has noted, "[i]nterpreted literally, the amendment does not define the circumstances under which the design immunity is lost; rather, it specifies the circumstances under which it may be retained. It is unclear what the legislature meant by 'public property [that] may no longer be in conformity with a plan . . . which could be reasonably approved.' [sic] Does this phrase refer to construction that has deviated from the original design? Or does it refer to the obsolescence of the original design under present design standards?" (Fisher, "Design Immunity for Public Entities," supra, 28 San Diego L.Rev. at p. 257, fn. omitted.)

Nothing in the legislative history of the 1979 amendment reflects an intent to expand Baldwin and provide for the loss of design immunity in a situation other than changed physical conditions. Instead, a review of the legislative history indicates the amendment was intended to respond to Baldwin by providing a reasonable extension of the immunity when, under the holding of Baldwin, that immunity otherwise would be lost. (See, e.g., Aug. 30, 1979, letter from Assemblyman John Knox to Governor Brown, regarding Assem. Bill No. 893 (1979-1980 Reg. Sess.) ["Although the staff of the Joint Committee on Tort Liability agreed with Baldwin, it felt there should be some recognition of the practical limitations which have been imposed upon governments by Article XIII A of the California Constitution (Proposition 13) and ever increasing liability insurance costs."].)

Case law on the interpretation of the 1979 amendment has been divided. Bane v. State of California (1989) 208 Cal.App.3d 860, 871 [256 Cal.Rptr. 468] held that "immunity is lost if the subsequent history shows the design was unreasonable for any reason." Bane found the 1979 amendment's failure to explicitly adopt the Baldwin requirement "nullified" the Baldwin language requiring changed physical conditions before the immunity terminates. Instead, Bane held the immunity terminates "if the subsequent history shows the design was unreasonable for any reason once the public entity has notice of the dangerous condition and has a sufficient time period to remedy it." (Ibid.) In contrast, Compton v. City of Santee, supra, 12 Cal.App.4th at page 598 held that a plaintiff must show changed circumstances in order to defeat design immunity. (Accord, Higgins v. State of California, supra, 54 Cal.App.4th at p. 187.)

Our review of the history of the 1979 amendment leads us to conclude that a change in physical conditions is necessary to defeat design immunity.[8] The Legislature's failure to speak to the issue of the circumstances under which immunity is lost left in place the judicial standard set forth in *Baldwin*. In 1969, the Legislature was invited to amend the statute to provide for loss of design immunity when the subsequent accident history revealed the design to be dangerous, but refused to do so. In 1972, the Supreme Court in *Baldwin* also declined to adopt that formula for the loss of design immunity. Nothing in the legislative history of the 1979 amendment suggests the Legislature intended by that amendment to expand the circumstances in which design immunity is lost. We therefore decline to follow *Bane*, and hold that *Baldwin*'s requirement of changed physical conditions is a prerequisite to the loss of design immunity.

■ Grenier has shown no change in physical conditions. He has shown the occurrence of three accidents, including his own and another the same day. In short, Grenier has shown that one *previous* accident occurred on Buena Vista Street in 1991, but has shown no evidence that this single accident in seven years constituted a change in conditions. Grenier also relies on the City's undisputed knowledge that Buena Vista Street flooded during storms. Yet the fact that Buena Vista Street flooded during storms was not a change in conditions, but something that, according to Grenier, existed from the day the improvements were first implemented. As stated in *Compton* v. *City of Santee, supra,* 12 Cal.App.4th at page 598, "[T]he factual showing was limited to expert opinion that the design was defective in light of current conditions, without any suggestion that current conditions differed from the conditions prevailing when the plan was approved. . . . Without evidence of some change, a design which was reasonably approvable at its inception remains reasonably approvable today." There is no triable issue of fact sufficient to defeat design immunity.

*Failure to Warn*

■ Although Grenier treats the issue of sufficiency of warning signs as a part of his defective design claim, it should be discussed independently. The failure to warn of a trap can constitute independent negligence, regardless of design immunity. (*Cameron* v. *State of California, supra,* 7 Cal.3d at pp. 328-329; *Hefner* v. *County of Sacramento, supra,* 197 Cal.App.3d at pp. 1017-1018.)

■ We apply the usual standard of summary judgment review. We exercise "an independent assessment of the correctness of the trial court's

---

[8]There is no dispute that immunity does not terminate unless the governmental entity had notice of a dangerous condition.

ruling, applying the same legal standard as the trial court . . . ." (*Iverson* v. *Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35]; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].)

■ It is undisputed that the City placed eight signs warning that Buena Vista Street flooded during storms. The City's expert stated that the use of the signs was "entirely appropriate and would have been within the standard of care when faced with the common problem of flooded streets." Grenier's expert's declaration, that the signs "did nothing to remedy the situation causing the dangerous flooding," does not raise a triable issue of fact as to whether the signs provided sufficient warning of the flooded condition. Grenier's evidence was directed to whether the warning signs eliminated the hazard of flooding, not whether they gave sufficient notice of the hazard. The hazard of flooding is protected by design immunity. No conflicting evidence was presented by Grenier on the adequacy of the signs as warnings. Thus, there is no triable issue of fact as to negligent failure to warn.

DISPOSITION

The judgment is affirmed. Grenier is to pay the City's costs on appeal.

Turner, P. J., and Godoy Perez, J., concurred.