Filed 12/9/24  Ramirez v. County of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| DAISY RAMIREZ, | |
| Plaintiff and Appellant, | E081911 |
| v. | (Super.Ct.No. PSC1801596) |
| COUNTY OF RIVERSIDE, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Godofredo Magno, Judge.  Affirmed.

Law Offices of Andy Basseri and Andy Basseri for Plaintiff and Appellant.

Smith Law Offices, Douglas C. Smith, and Christopher P. Romero for Defendant and Respondent.

Plaintiff and appellant Daisy Ramirez was seriously injured in a traffic accident. She sued defendant and respondent County of Riverside (County), alleging the county

1

road where the accident occurred is dangerous and a cause of her injuries.  The trial court granted the County summary judgment.  We affirm.

FACTS

Ramirez was injured in a three-vehicle traffic accident in March 2017.  The accident happened on Grapefruit Boulevard in Riverside County, about 5/8 of a mile north of the signal at Grapefruit Boulevard and 4th Street in Mecca.  The accident occurred where Grapefruit Boulevard runs roughly north/south, with one lane in each direction, separated by a broken yellow center line that permits passing in each direction, and with a posted speed limit of 55 miles per hour.  For about a mile and a half south and 10 miles north of the collision site, Grapefruit Boulevard is generally level, straight, and flat.

Ramirez was driving her Toyota Camry south on Grapefruit Boulevard when a northbound Volkswagen GTI travelling toward her at well over the speed limit crossed into the southbound lane, attempting to pass a slower-moving Nissan Rogue.  The Volkswagen swerved back into the northbound lane, avoiding a head-on collision with Ramirez, but hitting the right rear of the Nissan.  That impact caused the Nissan to spin into the southbound lane and collide with Ramirez's car.  The driver of the Nissan died at the scene.  Ramirez survived, but her injuries were, according to her complaint, "severe and permanent . . . including but not limited to injuries to her spinal cord leaving her paralyzed, as well as other substantial injuries."

Ramirez's mother was appointed her conservator and sued the driver of the Volkswagen, the County, and several other government entities.[1] Although the allegations of the complaint are broader, Ramirez and the County have stipulated that "her allegations regarding a dangerous condition are solely based on her allegations County failed to put a solid double yellow centerline to prevent passing of cars on Grapefruit Blvd."

The trial court granted the County's motion for summary judgment and entered judgment in the County's favor.

DISCUSSION

Ramirez argues there is a triable issue of fact as to whether the County "created a dangerous condition by allowing passing on Grapefruit Boulevard." Although the parties' briefing also addresses other issues, we find the County's affirmative defense of design immunity to be dispositive.[2] Because the County showed it is entitled to immunity for designing the road to allow passing at the site of the accident, and Ramirez

---

[1] Our opinion *Forest Lawn Memorial-Park Association v. Superior Court* (2021) 70 Cal.App.5th 1 arises from the same litigation.

[2] We therefore do not discuss at length the County's alternative grounds for summary judgment. These include whether Ramirez raised a triable issue of fact regarding the existence of a dangerous condition at all, particularly in light of Government Code section 830.4, which limits the definition of "dangerous condition." (See Gov. Code, § 830.4 ["A condition is not a dangerous condition . . . merely because of the failure to provide . . . distinctive roadway markings as described in Section 21460 of the Vehicle Code"; Veh. Code, § 21460, subd. (a) [describing "double parallel solid yellow lines" that prohibit passing].)
Undesignated statutory references are to the Government Code.

has not demonstrated any alternative basis for holding the County liable, summary judgment for the County was properly granted.

A. *Standard of Review*

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see Code Civ. Proc., § 437c, subds. (c) & (f).) We review a ruling on summary judgment de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1258.) In general, we give no deference to the trial court's ruling or reasoning, and only decide whether the right result was reached. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

B. *Analysis*

1. *Appellate Procedure*

A fundamental principle of appellate procedure is that, when requesting review of a written motion, the moving papers, any opposition thereto, and the court's ruling must all be included in the record. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) In the absence of an adequate record, "we presume the judgment is correct." (*Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.) Additionally, to demonstrate error, an appellant's arguments must be supported by

4

citations to the record. (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745 [the court "'"cannot be expected to search through a voluminous record to discover evidence on a point raised by [a party] when his brief makes no reference to the pages where the evidence on the point can be found in the record"'"'].) "Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894-895.)

Ramirez runs afoul of both these principles. Her attorney failed to designate the County's moving papers or reply brief for inclusion in the appellate record, instead including only her opposition. Her briefing on appeal refers to some documents in the limited record she designated but omits any record citations.[3]

Nevertheless, the appellate record is now sufficient, because the County chose to augment it. And, "if possible, appeals should be heard and decided on the merits." (*In re Serrano* (1995) 10 Cal.4th 447, 458.) We therefore exercise our discretion to decide the appeal on the merits, instead of deeming Ramirez's arguments forfeited.

---

[3] Ramirez points to certain deposition testimony by referring to pages in the deposition transcript without indicating where in the Clerk's Transcript those pages might be found. Similarly, she summarizes the analysis in an expert report she submitted in support of her opposition without reference to where in the Clerk's Transcript that report is located, or which portion of the report exactly she believes supports her characterization of it. Snippets of documents attached to Ramirez's appellate briefs do not ameliorate this deficiency.

## 2. *Design Immunity*

The Government Code provides that a public entity is "liable for injury caused by a dangerous condition of its property" if the plaintiff establishes certain elements. (§ 835.) A public entity can avoid some kinds of liability for a dangerous condition of public property by establishing the affirmative defense of design immunity, codified at section 830.6. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).) A showing of design immunity requires three elements: "(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction [or conformity with discretionarily approved standards]; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Ibid.*; see § 830.6.)

Our Supreme Court has explained that "[t]he rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Cornette*, *supra*, 26 Cal.4th at p. 69.) "'"[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested."'[Citation.]'" (*Ibid.*) Therefore, "'"as long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity

6

must be granted immunity.""" (*Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1158.)

The defense of design immunity may be resolved on a motion for summary judgment. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939-940 (*Grenier*).) The first two elements may be decided as an issue of law when the material facts pertaining to those elements are undisputed, while the third is always "a matter for the court, not the jury." (*Cornette*, *supra*, 26 Cal.4th at p. 72; accord *Grenier*, at pp. 939-940; § 830.6.) A defendant may rely on the allegations of the complaint to help show the plan or design on which its design immunity defense is predicated was the cause of the accident. (*Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550 (*Alvis*); *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1349-1350 (*Cerna*) [pleadings limit the issues on motion for summary judgment].) The discretionary approval element asks only whether a person vested with discretion to approve the design or plan approved it. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 357.) "[W]hether it was wise to approve the plan" is considered as part of the third element of the analysis, regarding reasonableness. (*Ibid.*)

Our first question is whether there is undisputed evidence that the accident was caused by an aspect of the County's plan or design, and not some other cause. (*Grenier*, *supra*, 57 Cal.App.4th at p. 941 ["The injury-producing feature must have been a part of the plan approved by the governmental entity"].) There is. Of course, if the matter were to proceed to trial, any negligence of the drivers, and particularly the Volkswagen driver,

would be an issue.  Nevertheless, the premise of Ramirez's allegations against the County is that the accident was caused by Grapefruit Boulevard's design.  (See *Alvis*, *supra*, 178 Cal.App.4th at p. 550; *Cerna*, *supra*, 161 Cal.App.4th at pp. 1349-1350.)  Thus, there is no disputed issue of material fact about the first element of design immunity.

Nor is there any disputed issue of fact on the approval element of the design immunity defense.  In May 1987, before construction in November 1987, California Department of Transportation engineers with discretionary authority to do so approved the plans for the relevant portion of Grapefruit Boulevard, including the decision not to divide the road physically or to use roadway markings to prohibit passing.  (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1263 (*Laabs*) [approval of city engineer, who had been delegated authority to exercise such discretion, satisfied city's evidentiary burden regarding approval element].)  Ramirez has produced no evidence to the contrary.

Finally, there is no disputed issue of fact about whether there is substantial evidence supporting the reasonableness of the design.  "Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element." (*Grenier*, supra, 57 Cal.App.4th at p. 941.)  "Approval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness." (*Ibid.*)  "We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted." (*Id.* at p. 940.)  Thus, a plaintiff's expert's disagreement "does not create a triable issue of fact." (*Id.* at p. 941.)

8

Here, the County's evidence includes an expert's declaration opining that Grapefruit Boulevard's design was reasonable and complied with prevailing professional standards, both at the time of its initial approval and now. The expert explained that "sight distance"—defined as "the contiguous length of highway ahead, visible to the highway user"—is the factor that "dictates whether or not a road should have a no passing zone." Grapefruit Avenue at the site of Ramirez's accident is straight, flat, and with no obstructions to visibility both to the north and south for distances far longer than would require a no passing zone.[4] That is substantial evidence supporting the reasonableness of the design. Indeed, there is no evidence to the contrary. Ramirez's own expert's opinion about whether a no passing zone should *now* be installed on Grapefruit Road, based primarily on his calculation of later traffic volumes and accident rates, is irrelevant to this element of the design immunity defense. It is also irrelevant that, as Ramirez emphasizes, the Volkswagen driver stated in his deposition that he would not have tried to pass in a no passing zone.[5] The question is not whether there were other designs that would have prevented the accident, but whether there is

---

[4] According to the County's expert, a no passing zone would be required where sight distance available was less than 900 feet at 55 miles per hour or 1100 feet at 65 miles per hour. Northbound Grapefruit Boulevard at the accident site "provided approximately 10 miles of sight distance," while the site distance for the southbound lane was "over a mile."

[5] The Volkswagen driver was asked if he would have crossed over into oncoming traffic if there had been "two double yellow lines in the center of the oncoming traffic." He responded: "No. There are two double lines for a reason."

9

substantial evidence the County's decision to use the design it did was reasonable, given the associated risks, costs, and benefits. There is.

We conclude the County met its evidentiary burden, and Ramirez failed to show a triable issue of material fact, on each of the three elements of the design immunity defense.

To be sure, "[d]esign immunity does not necessarily continue in perpetuity." (*Cornette*, *supra*, 26 Cal.4th at p. 66.) "To demonstrate loss of design immunity a plaintiff must also establish three elements: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings." (*Ibid.*; see § 830.6.)

Here, however, there is no evidence of any changes in the relevant physical conditions of Grapefruit Boulevard near the site of the accident.[6] The road is, as it was when constructed, straight and flat, with sight distances for drivers exceeding the standards required by prevailing professional norms regarding no passing zones.

---

[6] A project to improve the pedestrian routes and other changes in the immediate vicinity of the intersection of Grapefruit Boulevard and 4th Street in Mecca, more than half a mile from Ramirez's accident, is irrelevant. Her arguments to the contrary are without merit.

Relatedly, nothing in evidence shows the County had notice of a dangerous condition created by a change in physical conditions, or that it failed to remediate or warn of such a newly-created dangerous condition. Ramirez has presented no evidence to the contrary. Her expert's statistical analysis of accident rates does not attempt to address the physical conditions on Grapefruit Boulevard, or any changes to them, or the County's notice of any such changes. Moreover, the expert's calculation of an accident rate for a portion of Grapefruit Boulevard is based on *all* reported accidents in the decade between September 7, 2007 and December 29, 2017. Most of those accidents, however, were irrelevant to this case. Out of a total of 23 accidents, there were four involving attempts to pass. One of those four was, we presume, the March 2017 accident at issue here, and there is no information in our record about whether the other three preceded or followed that date. The expert offers no opinion about whether other roadways of similar configuration and characteristics have similar rates of accidents caused by attempts to pass. Thus, even setting aside the County's various other objections to the admissibility and probative value of Ramirez's expert's calculations, there is no basis in evidence to infer that Grapefruit Boulevard's broken single yellow centerline makes it particularly dangerous compared to similar roads.[7]

We conclude there is no triable issue as to whether the County continues to enjoy design immunity for the physical features of Grapefruit Avenue, including specifically its

---

[7] The County asks that we rule on its evidentiary objections, since the trial court did not expressly do so. We decline to do so, as it is unnecessary.

11

single broken yellow center line that allows passing, instead of a solid double yellow center line that would prohibit passing.

Our Supreme Court recently reaffirmed that design immunity does not shield a governmental entity from liability for failure to warn of a "concealed trap" created by an element of road design, and which could endanger even a driver acting with due care. (See *Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 667 (*Tansavatdi*), citing *Cameron v. State of California* (1972) 7 Cal.3d 318, 324 [design immunity "does not permit it to remain silent when it has notice that an element of the road design presents a concealed danger to the public"].) The idea is that even a reasonable design may have "foreseeable dangers that can and should be addressed through appropriate warnings." (*Tansavatdi*, at p. 668.) The paradigmatic example of a concealed trap is an unwarned-of curve or other change in the roadway's characteristics. (E.g. *Anderson v. City of Thousand Oaks* (1976) 65 Cal.App.3d 82, 93; see also *Tansavatdi*, at p. 649 [bicycle lane that ended abruptly, placing cyclists into traffic without warning].) Ambiguous or poorly placed signage is another example. (E.g. *Bakity v. County of Riverside* (1970) 12 Cal.App.3d 24, 31 ["Placing a stop sign in an unanticipated position could constitute a trap for an unwary motorist"].)

There is no evidence of a concealed trap here. There is nothing hidden or ambiguous or unexpected about the single broken yellow center line on Grapefruit Boulevard. It allows passing in both directions, and it alerts drivers that oncoming traffic also may be attempting passes. And there is no evidence of impeded sight distances or

other physical features of the road that would make passing, as permitted by those roadway markings, dangerous even when drivers are acting with due care.  Ramirez cites good law regarding liability for failure to warn of concealed traps, but she produced no evidence that it applies here.

We conclude the trial court was correct to grant summary judgment for the County.

DISPOSITION

The judgment is affirmed.  The County is awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
                                                                                                    J.

We concur:

RAMIREZ_____
                        P. J.

CODRINGTON_____
                        J.