Filed 3/23/21  De La Cruz v. Dept. of Transportation CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EVELYN DE LA CRUZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DEPARTMENT OF TRANSPORTATION,<br><br>    Defendant and Respondent. | B301317<br><br>Los Angeles County<br>Super. Ct. No. BC586789 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge. Affirmed.

Paoli & Purdy and Court B. Purdy for Plaintiff and Appellant.

Jerald M. Montoya, Deputy Chief Counsel, and Matthew Campbell for Defendant and Respondent.

# INTRODUCTION

This appeal arises from a tragic accident in which a man (the decedent) and his then seven-year-old daughter (plaintiff) were struck by a car while crossing Pacific Coast Highway (PCH) on foot. Plaintiff brought this wrongful death and personal injury action against the driver of the car involved in the accident, the City of Malibu, the City and County of Los Angeles, and the State of California. Plaintiff alleges a dangerous condition on public property caused the accident. The State of California through the Department of Transportation (Caltrans) designed and maintains the section of PCH where the accident occurred and is the only respondent in this appeal.

Plaintiff and the decedent had been at El Pescador State Beach during the afternoon and evening prior to the accident. They left the beach and were crossing PCH—a four-lane highway with a posted speed limit of 55 miles per hour—at approximately 9:00 p.m. to reach the decedent's car, which was parked on the highway shoulder across from the beach. Plaintiff's complaint asserts that the shoulder where the decedent parked was less than eight feet wide and, given that relatively narrow width, Caltrans should have prohibited parking on the shoulder. And if parking had been prohibited, plaintiff alleges, the decedent would not have parked on the shoulder, they would not have attempted to cross PCH on foot in the dark to reach the decedent's truck, and the accident would not have occurred.

Caltrans moved for summary judgment on the basis of design immunity under Government Code section 830.6[1] and sign

---

[1] All undesignated statutory references are to the Government Code.

and light immunity under sections 830.4 and 830.8. The court granted the motion and entered judgment in favor of Caltrans. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. The Scene

State Route 1, also known as PCH, runs along the coast throughout the length of Los Angeles County. PCH was designed and is maintained by Caltrans.

El Pescador State Beach (the beach) is located south[2] of PCH in Malibu, just east of Decker Canyon Road. A parking lot is near the beach and a short access road connects the parking lot to PCH.

In the area of the beach, PCH is a four lane highway (two lanes northbound, two lanes southbound) with a two-way left turn lane in the center of the highway. The posted speed limit is 55 miles per hour. Parking is not permitted on the coastal shoulder for some distance on either side of the access road. On the inland shoulder, a fog line separates the traffic lanes from the paved shoulder. If a person parks on the inland shoulder and wishes to access the beach, the person would need to cross the highway on foot. No marked crosswalk or traffic control signal is provided.

---

[2] PCH generally runs along the coast in a north/south direction. At the scene of the accident, however, PCH runs in an east/west direction due to the orientation of the coastline. Consistent with the highway's directional designation, we will refer to the direction of traffic on PCH at the accident site as northbound and southbound. To avoid confusion, we will reference the shoulders as inland (adjacent to northbound traffic lanes) and coastal (adjacent to southbound traffic lanes.)

3

## 2.    The Accident

The accident occurred just before 9:00 p.m. on August 9, 2014.[3] On that day, the decedent spent the afternoon and evening with family members at the beach. After the sun set, the decedent and his family packed up their belongings and left the beach. The decedent, who had parked his truck on the inland shoulder across from the access road, began crossing PCH while carrying plaintiff. He successfully crossed the two southbound traffic lanes and the center turn lane but then stepped into the first northbound traffic lane and was immediately hit by a car travelling at or near the posted speed limit. The decedent was thrown approximately 96 feet from the point of impact and died at the scene due to his injuries. Plaintiff landed in the center turn lane near the point of impact and sustained unknown injuries. The decedent's blood alcohol concentration was later determined to be 0.26 percent.

## 3.    The Operative Complaint

Plaintiff filed this wrongful death and personal injury action against the driver of the car, the City of Malibu, the City of Los Angeles, the County of Los Angeles, and the State of California. Plaintiff alleged that a dangerous condition on public property existed at the accident site. (See Gov. Code, § 830 et seq.) Specifically, she alleged that the inland shoulder "did not meet the minimum shoulder width requirements and was in violation of the CALTRANS Highway Design Manual" and other design guidelines. Because the inland shoulder near the beach failed to meet the mandatory width requirements, plaintiff

---

[3] The sun set at 7:48 p.m. on August 9, 2014.

4

asserted, Caltrans "should have prohibited the public, including Decedent and Plaintiff … from ever parking on the [inland shoulder], which would have not only eliminated the 'dangerous conditions' alleged herein but would have prevented this tragic accident from ever taking place. At all times relevant to this matter, these Defendants, have had actual and constructive knowledge that the width of the [inland shoulder] across from … El Pescador State Beach[ ] [was] of an insufficient width to accommodate vehicles parked along that section of the roadway as set forth in, and mandated by, Defendants['] own highway design standards and those recognized by the State of California as being the absolute [minimum] requirements."

Plaintiff also asserted that "additional conditions … added to the aforesaid 'dangerous condition,' " thereby creating a substantial risk of injury to pedestrians crossing PCH to access the beach. These additional "dangerous conditions included inadequate roadway markings and warnings to both pedestrians and motorists of the existence of pedestrians along and crossing [PCH], the absence of reasonable warning signs or beacons, the absence of any street lighting, visual distractions to motorists, unpredictable traffic gaps[,] sub-optimal warning signals and signs, the absence of a refuge island in the middle of the street which would permit a pedestrian to focus on the immediate traffic to his or her left until the pedestrian reached a point of safety on the opposition side of the street, inadequate parking for [the beach] which, combined with a busy four laned roadway, excessive speeds, and other traffic conditions served to create an immediate hazard, trap, and a deceptively dangerous condition to pedestrians, such as [plaintiff and the decedent] who could reasonably and foreseeably be anticipated to walk across this

5

thoroughfare while using due care to get back to their vehicle which was legally parked on the [inland shoulder] after visiting El Pescador State Beach."

### 4. Summary Judgment Proceedings

Caltrans filed a motion for summary judgment on the grounds of design immunity under section 830.6 and sign and light immunity under sections 830.4 and 830.8. With respect to design immunity,[4] Caltrans relied on plaintiff's complaint, which asserted that the design of the inland shoulder—specifically its less than eight foot width combined with the absence of a parking prohibition—led the decedent to park on the inland shoulder and thereby caused the accident.[5] Caltrans offered evidence that the "as-built" design plan for the section of PCH at issue was approved as required. And, finally, Caltrans cited expert testimony that the design of the highway was reasonable.

As to sign and light immunity, Caltrans noted that the absence of signs or lights is not a dangerous condition per se and, furthermore, signs and lights are only required where a dangerous condition is hidden or concealed, creating a trap for

---

[4] As we explain, a governmental entity asserting design immunity must demonstrate (1) a causal relationship between the design and the accident, (2) design approval prior to construction, and (3) any substantial evidence showing the reasonableness of the design.

[5] Although plaintiff's theory of liability relating to the highway design is attenuated, Caltrans did not move for summary judgment on the ground that the purported dangerous condition on the inland shoulder did not proximately cause the accident which, as noted, occurred in the center of the highway. Caltrans did not, however, concede the existence of a dangerous condition at the accident site.

motorists or pedestrians. The accident site, however, had no concealed dangerous conditions.

Plaintiff opposed the motion. Primarily, plaintiff argued that Caltrans was not entitled to design immunity because "[t]he immunity only applies to 'a design-caused' accident. [Citation.] In this case, the as-built plans themselves did not create the 'dangerous condition,' it was the failure to conform to the specifications and [Caltrans's] own minimum standards which created the defect and resulted in the Plaintiff and her father crossing PCH to try to reach their car parked on the sub-standard and defective right shoulder. The as-built plans specify that the right shoulder need be [*sic*] 8 feet because that was the minimum amount of space required to permit people to park in that area. [Caltrans], by its own admissions and relevant as-built design plans, left itself no room for error in the implementation of said design since anything less than the minimum 8 foot wide shoulder was undisputably [*sic*] in violation of [Caltrans's] very own [Highway Design Manual]" as well as other design guidelines. Summarizing her argument, plaintiff stated "[t]he Defendant mistakenly assumes that Plaintiffs have a criticism of the as-built design themselves [*sic*]. The issues arise not from the plans *per se* but from the fact that the subject roadway substantially deviates from said plans which should have resulted in parking being prohibited at the location of the accident."

5.     **The Court's Ruling and the Appeal**

As noted, Government Code section 830.6 provides complete governmental immunity from liability for injury caused by a dangerous condition on public property if the governmental entity can establish (1) a causal relationship between the public

7

property's design and the accident, (2) discretionary approval of the design prior to construction, and (3) substantial evidence supporting the reasonableness of the design. Here, the court found, Caltrans's design allowed for parking on the inland shoulder of PCH and plaintiff cited that design feature as the cause of the accident. And although plaintiff contended the inland shoulder at the site of the accident failed to comply with the design, she failed to establish that allowing parking on a narrower shoulder was per se unreasonable. As to the second element, the court found, based on Caltrans's expert witness, that the design plans relating to the accident site were approved as required. Finally, as to the third element, the court relied in part on Caltrans's expert witness to conclude the design was reasonable due to the expected (low volume) of pedestrian traffic at the accident site.

Addressing sign and light immunity, the court noted that a governmental entity need only provide signs and/or lighting to mitigate a concealed dangerous condition. On that point, the court found no triable issue of material fact as to whether any dangerous trap or peculiar condition existed at the accident site. Accordingly, the court granted Caltrans's motion for summary judgment.

The court entered a judgment in favor of Caltrans on July 25, 2019. Plaintiff timely appeals.

## DISCUSSION

### 1. Appellate Review of Summary Judgment

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in

8

fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id*. at p. 850; Code Civ. Proc., § 437c, subd. (c).) Where, as here, a defendant moves for summary judgment based on an affirmative defense, the defendant must show that undisputed facts support each element of the affirmative defense. (See *Tansavatdi v. City of Rancho Palos Verdes* (2021) 60 Cal.App.5th 423, 427–428 (*Tansavatdi*).) The party seeking summary judgment bears an initial burden of production to make a prima facie showing that no triable issue of material fact exists. (*Aguilar,* at p. 845.) If that party carries this burden of production, the opposing party then has the burden of production to make a prima facie showing that a triable issue of material fact exists. (*Ibid*.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler*, at p. 768.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.)

The appellant has the burden of showing error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v.*

9

*Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) We "affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court." (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481.)

## 2. Public Entity Liability for Dangerous Condition on Public Property

Under the Government Claims Act (the Act), " '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347 (*Hampton*); see *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 [noting " 'there is no common law tort liability for public entities in California' "].) The Act declares a general rule of immunity (§ 815) and then sets out exceptions to that rule. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 757 (*Cole*).) Plaintiff invokes the exception for a dangerous condition on public property.

The Act "provides for direct liability on the part of public entities for injuries caused by maintaining dangerous conditions on their property when the condition 'created a reasonably foreseeable risk of the kind of injury which was incurred' and either an employee's negligence or wrongful act or omission caused the dangerous condition or the entity was on 'actual or constructive notice' of the condition in time to have taken preventive measures. (§ 835; [citation].) A dangerous condition is one that 'creates a substantial ... risk of injury' when the property is 'used with due care in a manner in which it is reasonably foreseeable that it will be used.' (§ 830, subd. (a).)" (*Hampton, supra*, 62 Cal.4th at pp. 347–348, citing *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66 (*Cornette*).) "Property is

10

not 'dangerous' within the meaning of the statutory scheme if the property is safe when used with due care and the risk of harm is created only when foreseeable users fail to exercise due care." (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 439.)

As set forth in section 835, the cause of action for dangerous condition of public property consists of the following elements: "(1) a dangerous condition of public property; (2) a foreseeable risk, arising from the dangerous condition, of the kind of injury the plaintiff suffered; (3) actionable conduct in connection with the condition, i.e., either negligence on the part of a public employee in creating it, or failure by the entity to correct it after notice of its existence and dangerousness; (4) a causal relationship between the dangerous condition and the plaintiff's injuries; and (5) compensable damage sustained by the plaintiff." (*Cole, supra*, 205 Cal.App.4th at p. 758.)

Although Caltrans did not concede the existence of a dangerous condition on public property in its motion for summary judgment, it did not move for summary judgment based on the absence of a dangerous condition. We therefore proceed directly to the analysis of Caltrans's design immunity defense without considering whether plaintiff could prevail on her claim that a dangerous condition of public property exists at the accident site.

3. **The court properly granted Caltrans's motion for summary adjudication on the basis of design immunity.**

   3.1. **Legal Principles**

"If a dangerous condition is demonstrated, the public entity may still prevail against a claim by means of an affirmative defense of immunity. Various types of public sector immunity have been established by statute ... ." (*Hampton, supra*, 62

11

Cal.4th at p. 348 [citing §§ 830.8 and 831.2 as examples].) Caltrans asserts the affirmative defense of design immunity under section 830.6. The statute states in part: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." "The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Cornette, supra,* 26 Cal.4th at p. 69.)

A public entity raising this defense must establish three elements: (1) a causal relationship between a plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design. (*Cornette, supra*, 26 Cal.4th at p. 69.) The first two elements—causation and discretionary approval—involve factual questions to be resolved by a jury unless, as is the case here, the relevant facts are undisputed. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550

(*Alvis*); *Tansavatdi, supra,* 60 Cal.App.5th at p. 428) The third element—the existence of substantial evidence supporting the reasonableness of the plan or design—is a legal matter for the court to decide. (*Cornette,* at p. 66.)

### 3.2. First Element: Causal Relationship

Although plaintiff contends Caltrans did not establish any of the three elements of design immunity, her main argument focuses on the first element. Plaintiff insists that the design of PCH at the accident site has no causal relationship to the accident. Specifically, plaintiff asserts that the as-built plans are acceptable, but Caltrans failed to construct the inland shoulder according to the design plan. And because the shoulder as constructed is allegedly less than eight feet wide, plaintiff argues that Caltrans should have decided, separate and apart from the design plan, to prohibit parking on the inland shoulder. Plaintiff now purports to attack that "subsequent decision" by Caltrans to permit parking on the inland shoulder, rather than the highway design in the first instance. Plaintiff also appears to claim, for the first time, that the width of the inland shoulder is irrelevant and Caltrans should have prohibited parking on the inland shoulder due to the inherent danger to beach-going pedestrians who might park there and cross PCH on foot. We address these issues in turn.

Design immunity applies only to injuries "caused by the plan or design of a construction of, or an improvement to, public property ... ." (§ 830.6.) In other words, this defense does not immunize negligence unrelated to a design or plan. (See, e.g., *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940–941 (*Grenier*) [noting causation may be negated by evidence showing poor maintenance and clogging of drainage system, not merely

13

system's design].) On summary judgment, the defendant may rely on the allegations of the complaint to establish this element, as Caltrans did in this case. (*Alvis, supra,* 178 Cal.App.4th at p. 550, citing *Fuller v. Department of Transportation* (2001) 89 Cal.App.4th 1109, 1114.)

Here, plaintiff alleged that the inland shoulder "did not meet the minimum shoulder width requirements and was in violation of the CALTRANS Highway Design Manual" and other design guidelines. Because the inland shoulder near the beach failed to meet the mandatory width requirements, plaintiff further alleged, Caltrans "should have prohibited the public, including the Decedent and Plaintiff … from ever parking on the [inland shoulder], which would have not only eliminated the 'dangerous conditions' alleged herein but would have prevented this tragic accident from ever taking place."

In opposition to the motion for summary judgment, and again on appeal, plaintiff argues that PCH, as built, does not conform to the design plans: the design called for a minimum eight foot shoulder and the inland shoulder in the area of the accident was less than eight feet wide.[6] Plaintiff's unstated legal argument is, presumably, that the affirmative defense of design immunity is only available if the improvement as designed "conformed to a design approved by the public entity vested with discretionary authority." (*Cameron v. State of California* (1972) 7 Cal.3d 318, 326 (*Cameron*).) She also argues that, at a minimum, there is a material dispute of fact concerning the actual width of the shoulder at the accident site.

---

[6] The as-built plans state that the width of the inland shoulder is to be 2.4 meters, which converts to 7.87 feet or 7 feet, 10.5 inches. Both experts view 2.4 meters and 8 feet as equivalent.

It is true that the parties' experts did not agree on the precise width of the inland shoulder where the decedent's vehicle was parked. Caltrans's expert, Kim Nystrom, measured the inland shoulder at multiple points near the accident site. Nystrom measured the asphalt shoulder and a narrow drainage area that could be used by a vehicle parked on the shoulder. Including that drainage area, her shoulder width measurements in the immediate area of the decedent's vehicle ranged from 9 feet, 3 inches to 9 feet, 7 inches, while plaintiff's expert's measurements ranged from 7 feet, 10 inches to 8 feet, 10 inches. Nystrom also measured specific station line locations used by plaintiff's expert Allen Bourgeois and noted that their measurements were different. At 0 feet, she measured 8 feet, 11.5 inches while Bourgeois measured 7 feet, 10 inches; at 50 feet, she measured 8 feet, 8.5 inches while Bourgeois measured 7 feet, 8 inches; and at 100 feet, she measured the shoulder at 8 feet, 5 inches while Bourgeois measured 7 feet, 3 inches. Notably, the drainage area Nystrom included in her measurements added approximately one foot to the shoulder width measurements, as compared with Bourgeois, who did not include the drainage area. As Bourgeois noted, the inclusion of the drainage area in Nystrom's measurements likely accounts for the majority of the difference.

Although plaintiff's expert and Caltrans's expert disagreed on the precise width of the inland shoulder at the accident site, even the lowest measurements meet the design specification on the relevant section of PCH: Bourgeois determined that the inland shoulder directly across from the beach access road was 7 feet, 10 inches wide and gradually increased to 8 feet, 10 inches over the next 100 feet, moving in the northbound direction.

In any event, this factual dispute is not material because perfection is not required in the construction of roadways. On this point, both the court and Caltrans cite *Wyckoff v. State of California* (2001) 90 Cal.App.4th 45 (*Wyckoff*). There, a motorist sued the state for personal injury and wrongful death in connection with a highway accident. A northbound vehicle crossed the roadway's center median and struck the motorist's southbound vehicle, injuring the motorist and killing his wife and two children. The trial court granted summary judgment to the State on the ground of design immunity.

On appeal, the motorist claimed that " 'design immunity is not available to the State, since route 85, as built, never conformed to the design plans: the design called for a minimum 46-foot median, and route 85 was built with a 45-foot median.' " (*Wyckoff, supra*, 90 Cal.App.4th at p. 52.) The motorist's evidence established that the median measured 45.3 feet in the area of the accident. The Court of Appeal concluded, as did the trial court, that the improvement as built did not materially depart from the design approved by the public entity. Specifically, the State's expert explained that although the measurements taken by the experts in the case varied somewhat, and it appeared that the median was approximately six inches smaller than designed, the deviation was within construction tolerances. The court concluded that the median, which was approximately 45 feet, 5 inches wide at the accident site did not depart materially from the approved design calling for 46-foot-wide median, and therefore the affirmative defense of design immunity was available. (*Id.* at pp. 52–55.)

As noted *ante*, Caltrans's expert and plaintiff's expert measured the shoulder width slightly differently but both sets of

measurements were within a few inches of the specifications in the as-built plans. Further, Caltrans's expert stated that the placement of the fog line stripe that separates the traffic lanes from the inland shoulder was within acceptable tolerances. In other words, the width of the shoulder substantially complies with the as-built plans. Given that the premise of plaintiff's theory of liability is that the inland shoulder was too narrow to permit parking, these facts are fatal to her case.[7]

Perhaps it is not a coincidence, then, that plaintiff appears to assert a new theory on appeal. Plaintiff now suggests that "this is not a case where the accident is related to a defect in the As-Built Plans themselves *or even in the fact that the right shoulder did not adhere to the 8 foot width required on the plans*. This case revolves around the secondary decision of Caltrans, to permit parking against its own safety standards separate and apart from the design plans." (Italics added.) Plaintiff asserts, without citing any supporting evidence, that the as-built plans neither permit nor prohibit parking on the inland shoulder and that Caltrans made a decision to permit parking in that location at some unspecified time and for unspecified reasons.

Because plaintiff did not raise this argument in opposition to the motion for summary judgment and submitted no evidence to support her assertion that Caltrans made a subsequent decision to permit parking in the area of the accident site, we

---

[7] Plaintiff repeatedly cites the opinion of Joseph Kibe, the Senior Traffic Engineer for Caltrans, who opined that Caltrans's own safety rules state that parking should be prohibited on a shoulder less than eight feet wide. Because no material dispute of fact exists regarding the width of the shoulder, the court properly rejected this testimony as irrelevant.

conclude plaintiff has forfeited this issue. (See, e.g., *Venice Coalition to Preserve Unique Community Character v. City of Los Angeles* (2019) 31 Cal.App.5th 42, 54 [party forfeited issue by failing to "include the underlying facts to support [the] allegation in their separate statement of facts opposing summary judgment"]; *LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 983 [affirming grant of summary judgment and noting "[a]ppellant is not entitled to raise for the first time on appeal a theory that involves a controverted factual situation not put in issue below"].) We reach the same conclusion regarding plaintiff's suggestion that Caltrans should have prohibited parking on the inland shoulder due to the risk to pedestrians who might attempt to cross a highway with a posted speed limit of 55 miles per hour, irrespective of the width of the shoulder. That claim is not adequately pleaded in the operative complaint and that theory was also not raised in opposition to the motion for summary judgment.

### 3.3.   Second Element: Discretionary Approval

"The second element, discretionary approval prior to construction, 'simply means approval in advance of construction by the legislative body or officer exercising discretionary authority.' [Citation.] A detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval. [Citation.]" (*Grenier, supra*, 57 Cal.App.4th at p. 940.) "[T]he discretionary approval element of design immunity asks whether a person vested with discretion to approve the plan did approve the plan or design that was built, and that the question whether it was wise to approve the plan is

18

judged under the reasonableness element of the statute." (*Hampton, supra*, 62 Cal.4th at p. 357.)

In support of its motion for summary judgment, Caltrans submitted six pages of as-built plans relating to PCH at the accident site. One page shows the original path of construction of PCH in 1935 (Contract No. 67VC24). The other five pages were taken from the as-built plans for the most recent large-scale construction project on PCH (Contract No. 07-115294) which was completed in 2000. Those pages show the location of the project, the typical cross section of the roadway, the general layout of the roadway, and the installed roadway signs and pavement delineation. Plaintiff submitted the same design plan pages from Contract No. 07-115294 in her appendix of exhibits in support of her opposition and her expert relied on them in formulating his opinions. Nevertheless, plaintiff claims that the evidence fails to establish that the design plans were approved by a state employee with discretionary authority.

Caltrans's expert, Kim Nystrom, is a civil engineer who worked for Caltrans for 17 years and has extensive experience in, among other things, the roadway and design process. Nystrom attested that the title sheet shows that the plans submitted by Caltrans from Contract No. 07-115294 are "As-Built," meaning the plans "reflected what was actually constructed on the project and show that the constructed facility fully complies with the prior approved design plans. Both the Project Engineer's signature and the Design Engineer's signature [are] displayed on the bottom right-hand corner of the plan sheet to show that the plan was approved by the engineer(s) responsible for designing and overseeing the project."

The engineers' signatures on the as-built plans indicate that the plans were properly approved. "A signature is presumed to be genuine and authorized if it purports to be the signature, affixed in his official capacity, of [¶] … [a] public employee of any public entity in the United States." (Evid. Code, § 1453, subd. (b).) "Given this presumption, the signatures of the various Caltrans engineers, affixed in their official capacity as employees of the State, furnishes 'evidence sufficient to sustain a finding' that the writings were what the State claimed them to be. (Evid. Code, § 1400, subd. (a).) Thus, the plans themselves provide evidence that the [highway] design was given the requisite discretionary approval prior to construction." (*Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 728–729, abrogated on another point by *Cornette, supra,* 26 Cal.4th at p. 74, fn. 3.)

Contrary to the authority just discussed, plaintiff appears to contend that the as-built plans and Nystrom's declaration are insufficient to establish that the roadway plans were approved by an authorized person with discretionary authority. She suggests that "sworn declarations and testimony from city and state employees attesting to the procedures in place to provide the discretionary authority to approve specific plans" are required. None of the cases cited stand for that proposition, however, and we decline plaintiff's invitation to create such a rule.

### 3.4. Third Element: Substantial Evidence of Reasonable Design

"The third element of design immunity, substantial evidence of reasonableness of design, requires only substantial evidence. '[A]s long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity. The statute does

20

not require that property be perfectly designed, only that it be given a design which is reasonable under the circumstances.' [Citation.] Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element. [Citation.] Approval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness. [Citation.]" (*Grenier*, *supra*, 57 Cal.App.4th at p. 941.) Courts also consider evidence that the design complied with prevailing professional standards of design and safety. (See, e.g., *Weinstein v. Department of Transportation* (2006) 139 Cal.App.4th 52, 58–59; *Uyeno v. State of California* (1991) 234 Cal.App.3d 1371, 1380–1382.) The accident history of the improvement has been considered in evaluating the reasonableness of the design. (*Callahan v. City and County of San Francisco* (1971) 15 Cal.App.3d 374, 379–380.) "Section 830.6 makes the resolution of this issue a matter of law for the trial or appellate court." (*Alvis*, *supra*, 178 Cal.App.4th at p. 553, citing *Cornette*, *supra*, 26 Cal.4th at p. 72.)

The regular rules governing motions for summary judgment, which require that the motion be denied if the party opposing the motion raises any triable issue of material fact, do not apply to the reasonableness element of the design immunity defense. (*Wyckoff, supra*, 90 Cal.App.4th at pp. 50–51.) " '[T]he defendant is not required to prove to the court that the design or plan was in fact a reasonable one. Instead, the defendant is merely required to adduce any "substantial evidence" that a reasonable public employee or legislative body could have approved the plan or design used ... .' " (*Id.* at p. 51.) "We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is

21

substantial evidence of reasonableness, even if contradicted." (*Grenier, supra,* 57 Cal.App.4th at p. 940.) "That a plaintiff's expert may disagree does not create a triable issue of fact." (*Id.* at p. 941.)

Nystrom's declaration provides substantial evidence that the design of PCH at the site of the accident is reasonable. Nystrom is a specialist with extensive work experience at Caltrans regarding safety standards and building practices on freeways and conventional highways. As part of her evaluation of the accident site, Nystrom reviewed the as-built plans, pedestrian accident reports during the 10 years preceding the accident at issue, several highway design standards and manuals, and reports and photographs relating to the accident. She also went to the accident site twice and examined the highway.

Nystrom observed that the area surrounding the accident site is rural with few homes or businesses in the area. PCH is straight for approximately one mile in both directions from the accident site and no obstructions impair the visibility of either motorists or pedestrians. In addition, only one other pedestrian accident was reported between 2005 and 2014—and that pedestrian was intoxicated, like the decedent—which "shows that roadway segment did not present a substantial risk of injury to motorists or pedestrians using due care." She also noted that highway design resources, including Caltrans's Highway Design Manual, "allow[ ] for flexibility in design, based upon conditions, and encourage the use of sound engineering discretion and judgment." In addition to engineering factors, a design must also account for physical constraints, right-of-way constraints, costs, environmental constraints, and other relevant factors. In her

view, "there appears to be no deviations from applicable design guidance" at the accident site.

In addition, Nystrom concluded that the design was reasonable in light of the terrain and other environmental factors including concerns about light pollution. Weighing those factors, as well as the long sight distances at the accident site and the absence of obstructions, Nystrom concluded that PCH "does not pose a danger to motorists or pedestrians when used with due care and caution."

Plaintiff relies on her expert's testimony stating that on-street parking should be prohibited in areas where the speed limit exceeds 45 miles per hour. In doing so, however, she fails to acknowledge that the typical summary judgment standard does not apply with respect to this element. As we have said, the question is not whether the evidence is undisputed but rather whether there is *any* substantial evidence of reasonableness—disputed or undisputed. And as we have also said, Nystrom's opinion provides such substantial evidence.

4. **The court properly granted Caltrans's motion for summary adjudication on the basis of sign and lighting immunity.**

Plaintiff additionally contends the court erred in concluding that Caltrans is entitled to sign and lighting immunity under sections 830.4 and 830.8. We disagree.

As noted *ante*, the area of PCH at issue does not include any pedestrian-related safety measures such as a crosswalk, sign, lighting or warning indicator. Under section 830.4, however, "[a] condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed

23

restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code." Section 830.8 provides additional guidance: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." In other words, these safety measures are only required if a hidden dangerous condition exists. (*Cameron*, *supra*, 7 Cal.3d at p. 327 [noting that a public entity may be liable for failure to provide warning signs if a sign is necessary to warn of a dangerous condition which would not be reasonably apparent to, and would not have been anticipated by, a person using the highway with due care].)

Plaintiff contends that Caltrans was obligated "to lessen an already existing 'dangerous condition' by installing warning signs and street lights to illuminate the subject roadway which created a 'trap' for both pedestrians and motorists." We reject this argument because there is no evidence that any dangerous condition alleged by plaintiff was concealed or hidden. As discussed *ante*, Caltrans's expert visited the accident site and observed clear sight lines for a mile in each direction of the accident site and no obstructions along PCH that would impair the visibility of either motorists or pedestrians. During the day,

when the beach is open and cars are parked on the inland shoulder, motorists would easily be able to observe beach-going pedestrians attempting to cross PCH. As for the pedestrians, the risk of crossing a four-lane highway with a speed limit of 55 miles per hour is inherently obvious and a pedestrian using due care would wait for a gap in traffic sufficient to allow safe crossing. In sum, the risks of crossing PCH on foot are readily apparent and there is no evidence suggesting a pedestrian "trap" exists at the accident site.

## DISPOSITION

The judgment is affirmed. Caltrans shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

ADAMS, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25