Filed 5/9/23 Duran v. County of Los Angeles CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| OSCAR DURAN et al., | B311324 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC710818) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

Appeal from judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge. Affirmed.

Law Offices of Andy Basseri and Andy Basseri for Plaintiffs and Appellants.

Collins + Collins, Tomas A. Guterres, David C. Moore and Adam A. Ainslie for Defendant and Respondent.

_____

In May 2017, a car struck and killed Christian Duran as he attempted to cross 61st Street in Los Angeles. Appellants Oscar Duran, Angela Duran, Jasmine Duran, and Matthew Duran (collectively, the Duran appellants) sued the County of Los Angeles (the County) under section 835,[1] claiming it created a dangerous condition at the accident site by removing a preexisting crosswalk, leaving behind faded crosswalk markings, neglecting to install speed humps, and failing to enforce parking restrictions. The trial court granted summary judgment to the County, determining as a matter of law that no dangerous condition existed at the accident location. The Duran appellants ask us to reverse the trial court, urging that disputed issues of material fact preclude summary judgment of their section 835 claim.

Although we sympathize with the tragedy of the accident, we conclude that the trial court properly granted summary judgment to the County. The statutory immunities afforded the County under sections 830.6 and 818.2 bar each of the Duran appellants' theories of liability, with the exception of their allegations concerning the faded crosswalk markings. As to their faded crosswalk theory, the Duran appellants cannot establish the requisite causation. We therefore affirm.

---

[1] Unless otherwise specified, all subsequent references are to the Government Code.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

### A.    The Accident

On May 12, 2017, at approximately 6:10 p.m., a car struck and fatally injured 10-year-old Christian Duran while he was crossing 61st Street between Hooper Avenue and Central Avenue in Los Angeles, California.  This portion of 61st Street is a flat, straight, east-west roadway consisting of one lane in each direction.  It borders a continuous two-block stretch that contains the Diego Rivera Learning Complex (the complex).  "School Zone" and speed limit signs—restricting vehicular travel to 25 miles per hour[3]— bookend the east and west entrances of the street.

Prior to construction of the complex, a roadway called Naomi Avenue formed an intersection with 61st Street.  A pedestrian crosswalk marked the intersection.  In connection with construction of the complex, the County converted the portion of Naomi Avenue that then intersected 61st Street into a driveway and purportedly removed the pedestrian crosswalk.

The Duran appellants contend that, at the time of the accident, Christian was crossing 61st Street at the site of the former crosswalk, where the County allegedly left behind faded crosswalk markings.  The Duran appellants allege further that cars parked illegally on 61st Street interfered with Christian's and the driver's ability to see one another.

The County, in contrast, contends that the evidence demonstrates that the crosswalk markings had been completely removed, that Christian "knew there wasn't a crosswalk at

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

[3] The Duran appellants do not contend that the driver involved in the accident was speeding.

61st Street," and that the accident occurred because Christian ran abruptly into the street, without first checking for oncoming traffic.[4]

### B.    Design and Construction of the Complex

In 2008, the City of Los Angeles ceded Naomi Avenue to the Los Angeles Unified School District (LAUSD) for the development of LAUSD South Region High School No. 2, now known as the Diego Rivera Learning Complex.  In connection with the development and construction of the complex, LAUSD submitted to the County two sets of street improvement plans—the phase 1 plan and the phase 2 plan.  County engineers approved the phase 1 and phase 2 plans in October 2009 and February 2010, respectively.  In May 2010, County engineers also approved a "signing and striping" plan governing the project's signage and pavement markings.

As relevant here, the plans contemplated the conversion of the portion of Naomi Avenue that then abutted 61st Street into a gated driveway for the complex.  In addition, the signing and striping plan called for the removal of the pedestrian crosswalk where Naomi Avenue and 61st Street then met.

Following completion of construction, the County conducted a field inspection to ensure the finished project conformed to the plans.  On April 4, 2013, the County field-approved the signing and striping for 61st Street, and on May 9, 2017, the County issued a "notice of field acceptance" for the entire completed project. (Boldface and capitalization omitted.)  The notice provides, in relevant part:  "Final inspection of the above captioned street improvements has been made.  The work has been completed in accordance with the plans and specifications."

---

[4] None of the Duran appellants witnessed the accident, although they arrived on the scene shortly after it occurred.

4

### C.    Trial Court Proceedings

The accident giving rise to this appeal took place on May 12, 2017, three days after the County issued the field acceptance notice for the completed project.  On June 20, 2018, the Duran appellants filed a complaint in the superior court against the County, as well as the driver and owner of the vehicle involved in the accident,[5] asserting among other claims against the County that "[t]he dangerous conditions existing at the subject location were a cause of Christian Duran's injuries."

On May 29, 2020, the County filed a motion for summary judgment or, in the alternative, summary adjudication.  As relevant to this appeal, the County's motion argued that (1) no dangerous condition existed at the accident location at the time of the incident, (2) section 818.2 immunized the County from any liability for failing to enforce traffic laws on 61st Street, (3) the "design immunity" conferred by section 830.6 barred the Duran appellants' claims, and (4) Christian knew the County had removed the crosswalk on 61st Street, and he caused the accident by darting into the street without checking for oncoming traffic.  Along with its motion, the County submitted numerous declarations and a separate statement of undisputed material facts.

The Duran appellants opposed the motion.[6]  In support of their opposition, they submitted several declarations and a report from proposed engineering expert Dale Dunlap.  Dunlap opined that

_____

[5] Neither the driver nor the owner of the vehicle is a party to this appeal.

[6] The Duran appellants designated their opposition to the County's summary judgment motion for inclusion in the appellate record, but the opposition does not appear in the clerk's transcript. We therefore take judicial notice of the opposition.  (See Evid. Code, § 452, subd. (d).)

illegally parked vehicles near the incident location obstructed sightlines between pedestrians and motorists, and therefore were "a primary cause of th[e] accident." Dunlap's report also included a summary of prior accidents on 61st Street, as well as measurements, taken on August 25, 2020, of the volume of pedestrian and vehicular traffic near the accident site. In response, the County filed reply papers, along with objections to certain evidence submitted by the Duran appellants.

The trial court overruled the County's objections and granted summary judgment. With respect to the Duran appellants' "dangerous condition" claim under section 835—the only claim at issue on appeal—the trial court found that the undisputed facts established the absence of a dangerous condition at the accident location. The court entered judgment in favor of the County and denied the Duran appellants' subsequent motions for reconsideration and a new trial. The Duran appellants timely appealed.[7]

## DISCUSSION

### A.    Standard of Review

#### 1.    *Summary Judgment*

"We review a trial court's granting summary judgment de novo, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been

---

[7] We deny the County's request that we strike the Duran appellants' opening brief due to various alleged violations of the California Rules of Court, including "fail[ure] to include cites to the record" and "fail[ure] to support each point with legal argument." The Duran appellants' opening brief contains numerous shortcomings, but it sets forth their arguments sufficiently to permit consideration of their appeal on its merits.

made and [correctly] sustained.' [Citation.] We 'liberally constru[e] the evidence in support of the party opposing summary judgment and resolv[e] doubts concerning the evidence in favor of that party.' [Citation.]" (*Peralta v. The Vons Companies, Inc.* (2018) 24 Cal.App.5th 1030, 1034.)

## 2. *New Trial*

"Generally, rulings on new trial motions are reviewed for an abuse of discretion. [Citation.] Nonetheless, in the case of an order denying a new trial following summary judgment, the determinations underlying the denial dictate our standard of review. [Citation.] To the extent the denial relies on the resolution of a question of law, including the nonexistence of triable issues of fact, we examine the matter de novo." (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1176.) "We therefore review [a] challenge to the denial as we would examine a direct attack on the order granting summary judgment, insofar as [plaintiff] asserts that the evidence considered by the trial court when it granted summary judgment raised triable issues of fact." (*Id.* at pp. 1176−1177.)

## B. Law Governing Liability Arising from a "Dangerous Condition" of Public Property

"Under the Government Claims Act, a tort action cannot be maintained against a government entity unless the claim is premised on a statute providing for that liability." (*Tansavatdi v. City of Rancho Palos Verdes* (Apr. 27, 2023, S267453) __ Cal.5th __ [2023 WL 3107312 at p. *5] (*Tansavatdi*), citing § 815.) Here, the Duran appellants seek recovery "pursuant to section 835, which ' "is the principal provision addressing the circumstances under which the government may be held liable for maintaining a dangerous condition of public property." ' [Citation.]" (*Tansavatdi, supra,*

7

___ Cal.5th __ [2023 WL 3107312 at p. *5].) "To establish liability under section 835, a plaintiff must show: '(1) "that the property was in a dangerous condition at the time of the injury"; (2) "that the injury was proximately caused by the dangerous condition"; (3) "that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) either (a) that a public employee negligently or wrongfully "created the dangerous condition" or (b) that "[the] public entity had actual or constructive notice of the dangerous condition a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." ' [Citation.]" (*Tansavatdi, supra*, ___ Cal.5th ___ [2023 WL 3107312 at p. *5].)

The Government Code also includes numerous statutory provisions that limit a public entity's liability, two of which—sections 830.6 and 818.2—are relevant to this appeal. "Section 830.6, commonly referred to as 'design immunity,' precludes liability for any injury caused by 'the plan or design of . . . , or an improvement to, public property.' " (*Tansavatdi, supra*, __ Cal.5th __ [2023 WL 3107312 at p. *5], citing § 830.6.) Section 818.2 immunizes a public entity against liability "for an injury caused . . . by failing to enforce any law." (§ 818.2.)

Here, the Duran appellants advance three theories in seeking to impose section 835 liability on the County: (1) the County created a dangerous condition by approving and implementing plans for the complex that (a) called for the removal of the crosswalk on 61st Street and (b) did not require the installation of speed humps, (2) the County's failure to enforce parking restrictions on 61st Street resulted in a dangerous condition, and (3) the County created a dangerous condition by failing to completely remove the markings designating the former crosswalk on 61st Street.

All three theories fail. The statutory immunities afforded the County under sections 830.6 and 818.2 defeat the Duran appellants' first and second theories of liability, respectively. And the Duran appellants' faded crosswalk theory fails for lack of causation.

### C. The County's Section 830.6 Design Immunity Precludes Liability for Removal of the Crosswalk and the Absence of Speed Humps on 61st Street

The County urges that it has design immunity under section 830.6 from any liability arising out of conditions contemplated by the approved plans for the complex—namely, (1) removal of the crosswalk on 61st Street, and (2) the absence of any speed humps on the street. We agree.

" 'The rationale for design immunity is to prevent a jury [or trial court acting as trier of fact] from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design.' " (*Tansavatdi, supra*, ___ Cal.5th ___ [2023 WL 3107312 at p. *5].) "[D]esign immunity requires that a public entity establish three elements: '(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design.' [Citation.] Resolution of the third element—the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design—is a matter for the courts, not the jury, to decide." (*Tansavatdi, supra*, __ Cal.5th __ [2023 WL 3107312 at p. *5], citing § 830.6.)

The Duran appellants do not dispute, and we agree, that the County has satisfied the first two elements of design immunity. As to the first element, the Duran appellants allege a causal relationship between the accident and the County's design

9

decisions. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550 (*Alvis*) ["[t]he County may rely on the allegations of the complaint to establish [the] causation" element of design immunity].) With respect to the second element, County engineers approved the phase 1 and phase 2 plans for the complex, as well as the signing and striping plan. (See *Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 526 ["[d]iscretionary approval simply means approval in advance of construction by the legislative body or officer exercising discretionary authority"].)

We further conclude that the County has established the third element of design immunity because the record contains substantial evidence supporting the reasonableness of the plans for the complex. (*Tansavatdi, supra,* __ Cal.5th __ [2023 WL 3107312 at p. *5].) Licensed County engineers approved the plans, "utiliz[ing] and rel[ying] upon the California Manual on Uniform Traffic Control Devices and County guidelines," as well as "independent engineering judgment" in doing so. (See *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 941 ["[a]pproval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness"].)

The Duran appellants insist that summary judgment is inappropriate because their engineering expert disputes the plans' reasonableness; however, section 830.6 provides that the third element of design immunity is satisfied "if the trial or appellate court determines that there is *any* substantial evidence upon the basis of which . . . a reasonable legislative body or other body or employee could have approved the plan or design." (§ 830.6, italics added.) In other words, the " 'normal rules governing a motion for summary judgment, and requiring its denial if any triable issue of fact appears, are not fully applicable . . . to cases involving design immunity.' " (*Wyckoff v. State of California* (2001) 90 Cal.App.4th

45, 50.) "The third element, substantial evidence of reasonableness, [therefore] requires only evidence of solid value that reasonably inspires confidence. [Citation.] We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity even if the evidence is contradicted." (*Alvis, supra,* 178 Cal.App.4th at p. 550.) Accordingly, we conclude that the County has established its entitlement to design immunity under section 830.6.

The Duran appellants' contention that the County has lost its design immunity does not persuade us otherwise. To establish a public entity's loss of design immunity, a plaintiff must prove three elements, the first of which is that "the plan or design has become dangerous because of a change in physical conditions." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66.) None of the allegedly "changed conditions" that the Duran appellants identify is sufficient to satisfy this element.

The Duran appellants first point to the construction of the complex's school and park, including the related decision to remove the crosswalk on 61st Street. These changes, however, cannot constitute "changed conditions" because they were part of the County-approved plans for the complex. (See *Alvis, supra,* 178 Cal.App.4th at p. 555 ["the claimed change of physical conditions cannot be based on the same technical data or policy decisions that went into the original plan or design"].) The Duran appellants' allegations concerning increased traffic volume also fail to demonstrate changed conditions because the record contains no evidence of traffic volume prior to construction of the complex. Nor are we persuaded by the Duran appellants' contention that prior accidents on 61st Street demonstrate that changed conditions rendered the street's design—including removal of the crosswalk at Naomi Ave—dangerous for pedestrians. The record discloses

that no other auto-pedestrian collisions occurred where 61st Street meets Naomi Avenue during the approximately four-year period between removal of the crosswalk and the accident giving rise to this appeal. We therefore conclude that the Duran appellants have failed to identify any "changed conditions" sufficient to negate the County's design immunity.[8]

The Duran appellants' final argument—that illegally parked cars and the faded crosswalk constitute "concealed trap[s]" under section 830.8 that fall outside the scope of any design immunity[9]— also misses the mark. We agree that these conditions are not part of the County-approved plans for the complex and thus fall beyond the reach of the County's design immunity. But as set forth, *post*, these conditions fail to support section 835 liability for other, independent reasons—namely, the County's section 818.2 immunity and the Duran appellants' failure to establish causation.

---

[8] We therefore necessarily reject the Duran appellants' contention that "changed conditions" required the County to install speed humps on 61st Street.

[9] "Section 830.8 provides [another] form of immunity, precluding public entity liability 'for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code.' [Citation.] Section 830.8, however, sets forth a limitation to such immunity: 'Nothing in this section exonerates a public entity . . . from liability for injury . . . caused by such failure if a signal, sign, marking or device . . . was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.' This limitation to section 830.8 immunity is commonly referred to as the 'concealed trap' exception." (*Tansavatdi, supra,* ___ Cal.5th ___ [2023 WL 3107312 at p. *5].)

12

Accordingly, we conclude that the County's section 830.6 design immunity bars the Duran appellants' claims, to the extent premised on removal of the crosswalk and the absence of speed humps on 61st Street.

### D. Section 818.2 Immunizes the County from Liability for Any Failure to Enforce Parking Restrictions

We turn next to the Duran appellants' contention that the County's failure to enforce parking restrictions on 61st Street created a dangerous condition. The plain language of section 818.2 immunizes the County from liability "for an injury caused by . . . failing to enforce any law." (§ 818.2.) The Duran appellants fail to address section 818.2 or to distinguish *Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, the primary case on which the County relies in arguing that section 818.2 precludes liability for injuries caused by a public entity's failure to enforce traffic laws. (See *Sutton*, *supra*, at p. 1165 ["as the District points out, it is entitled to immunity [under section 818.2] for . . . any failure to enforce the speed limit"].) We therefore conclude that the Duran appellants' allegations concerning illegally parked cars near the accident site cannot support the imposition of section 835 liability on the County.

### E. The Duran Appellants' Faded Crosswalk Theory Fails for Lack of Causation

Finally, the Duran appellants contend that the presence of faded crosswalk markings at the accident site constituted a dangerous condition of public property. Even assuming the presence of such markings (which the County disputes), the undisputed facts demonstrate that the faded crosswalk was not a proximate cause of the accident. The Duran appellants' theory

13

of causation is that Christian "thought he was crossing at a crosswalk, since it[']s faded."  The County points out, however, that Oscar Duran testified at deposition that "Christian knew there wasn't a crosswalk at 61st Street" at the time of the accident. This admission from Christian's father is sufficient to shift the summary judgment burden to the Duran appellants with respect to the causation element of their section 835 claim.  (See *Alvis, supra,* 178 Cal.App.4th at p. 547.)  Yet the Duran appellants fail to explain how we can reconcile the admission with their theory of causation.

Accordingly, we affirm the trial court's grant of summary judgment for the County.[10]

---

[10] We ground our affirmance in the County's statutory immunities and Christian's father's admission concerning causation.  As a result, we need not address the parties' remaining arguments, which include disputes regarding notice, the declaration of witness Romana Calderon, the characterization of the Naomi Avenue driveway as a " 'T'-intersection,"  and the trial court's purported failure to consider the Duran appellants' oral arguments concerning prior accidents at the summary judgment hearing.

## DISPOSITION

We affirm the trial court's December 11, 2020 judgment. The County is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.