Filed 10/30/23 Modified and Certified for Pub. 11/28/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| KIERRA STUFKOSKY et al.<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION,<br><br>Defendant and Respondent. | 2d Civ. No. B317192<br>(Super. Ct. No. 18CV04079)<br>(Santa Barbara County) |

  Jorgen Stufkosky died in a multi-car accident caused by a deer crossing State Route 154 (SR-154). His children, appellants Kierra and Merek Stufkosky, sued respondent California Department of Transportation (Caltrans) and others for negligence. They alleged the road constituted a dangerous condition under Government Code section 835.[1] The trial court found that design immunity applied to Caltrans and granted

---

  [1] All unmarked statutory references are to the Government Code.

summary judgment.  We agree and affirm the judgment in favor of Caltrans.

### FACTUAL AND PROCEDURAL BACKGROUND

Martha Aguayo struck a deer while driving westbound on SR-154 near Santa Ynez, California.  The impact sent the deer into the eastbound lane where it struck an oncoming SUV.  The SUV lost control, veered across the centerline, and collided head on with a westbound car driven by Jorgen Stufkosky.  Stufkosky died of the injuries caused by the collision.

SR-154 is a state owned highway built in 1934 and realigned to its current location in 1971.  The accident occurred at postmile 9.62, where the highway has two westbound lanes, one eastbound lane, and a posted speed limit of 55 miles per hour.  A four-foot-wide painted median with rumble strips separates traffic.  Six deer warning signs appear along the 15-mile segment of the highway in which the accident occurred.  Caltrans installed the two closest signs in 1979:  one facing eastbound traffic at postmile 8.55; the other facing westbound traffic at postmile 13.8.  It moved the latter to postmile 12.55 in 1982 at the request of the Department of Fish and Game.

Appellants sued Caltrans for negligence and dangerous condition of public property, alleging SR-154's design, lack of deer crossing signs, and high speed limit created a substantial risk of injury to motorists.  The trial court granted summary judgment for Caltrans on the ground that design immunity shielded it from liability under section 830.6.[2]

---

[2] The trial court rejected two alternative arguments made by Caltrans:  (1) that no dangerous condition existed as a matter of law; and (2) that section 831.2's "natural condition immunity" applied as well.  We need not address them here because we affirm on the basis of section 830.6.

DISCUSSION

Appellants contend the trial court erred when it found design immunity was a complete defense to Caltrans' liability. They also contend the court failed to address a separate basis of liability, failure to warn, when it ruled on the motion for summary judgment. Neither argument is persuasive.

*Design Immunity*

"[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that . . . [t]he public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835.) The public entity may seek to shield itself from liability by claiming design immunity under section 830.6.[3] This requires

_____

[3] Section 830.6 provides in pertinent part: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

3

the entity to "show the existence of three elements, "'(1) [a] causal relationship between the plan and the accident; (2) discretionary approval of the plan prior to construction; [and] (3) substantial evidence supporting the reasonableness of the design.'"'" (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939 (*Grenier*).)

"Design immunity is . . . often raised on a motion for summary judgment or nonsuit, [thereby] enabling the trial court to find the defense established as a matter of law." (*Grenier*, *supra*, 57 Cal.App.4th at 939-940.) "'The normal rules governing a motion for summary judgment, and requiring its denial if any triable issue of fact appears, are not fully applicable [to cases involving design immunity under . . . section 830.6]. For example, the defendant is not required to prove to the court that the design or plan was in fact a reasonable one. Instead, the defendant is merely required to adduce any 'substantial evidence' that a reasonable public employee or legislative body could have approved the plan or design used under [section] 830.6. Thus, when the defendant files a motion for summary judgment, the existence of a possible conflict of evidence, as shown by the proof submitted on the motion, will not create a triable issue on this aspect of the defense that can defeat a summary judgment . . . .'" (*Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 50-51, quoting 2 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th. ed. 2001) Dangerous Condition of Public Property, § 12.74, p. 842.)

### 1. Causal Relationship Between Design Plans and the Accident

Appellants contend Caltrans cannot establish a causal relationship between SR-154's design and the accident because Caltrans did not produce evidence that it "expressly consider[ed]" the design alternatives they contend would have prevented it,

4

such as lowering the speed limit, placing more deer crossing signs, or installing median barriers. (See *Higgins v. State of California* (1997) 54 Cal.App.4th 177, 185 ["Design immunity is intended to immunize only those design choices which have been made"].) We conclude otherwise. Such evidence is not necessary because the complaint clearly alleges the required causal connection. (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 550 [public entity "may rely on the allegations of the complaint to establish causation"].)

Appellants allege Caltrans was "well aware of deer entering the roadway in the area of the accident" yet failed to safeguard motorists or warn them adequately of the danger in violation of section 835. They also allege Caltrans "owned, planned, programmed, prioritized, designed, constructed, contracted, maintained, repaired, controlled, managed, monitored, replaced, signed, signaled, lighted, striped, painted, and/or entered into contracts, leases and easements in regards to the Subject Roadway." Appellants' theory of the case, in sum, is that Caltrans designed SR-154 without certain specific features they contend would have made the highway safer. Caltrans need not produce additional evidence to prove this point.

*2. Discretionary Approval of the Design*

The "discretionary approval" element of design immunity has two parts: (1) the design must have "been approved in advance . . . by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval"; or (2) the design must have been "prepared in conformity with standards previously so approved." (§ 830.6.) Appellants contend Caltrans cannot establish these criteria for the same reason it cannot establish the requisite causal connection, i.e., because the agency did not consider certain

5

safety features that would have prevented the accident. The decision "not to include a feature in a project," they again argue, is shielded by design immunity only if the public entity "expressly considered" that feature in advance of the decision. They again misinterpret what Caltrans must show.

Advance approval "simply means approval in advance of construction by the legislative body or officer exercising discretionary authority." (*Ramirez v. City of Redondo Beach* (1987) 192 Cal.App.3d 515, 526.) "A detailed plan, drawn up by a competent engineering firm, and approved by a city engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval." (*Grenier*, *supra*, 57 Cal.App.4th at p. 940.) Caltrans submitted detailed plans for the area of SR-154 where the accident occurred. A traffic engineer attested to the applicable design standards and how Caltrans addressed the dangers posed by deer entering traffic and vehicles crossing the median. This constitutes substantial evidence of advance approval. We will not second-guess the decision of Caltrans to include or omit certain design features. "[T]he law's purpose is to avoid the dangers involved in permitting reexamination and second-guessing of governmental design decisions in the context of a trial." (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 349.)

Appellants cite authorities in which the public entity introduced evidence that it considered a particular design feature but decided not to include it. (See, e.g., *Fuller v. Department of Transportation* (2001) 89 Cal.App.4th 1109, 1115 [speed limit left unchanged after speed study conducted]; *Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1161 [center median considered but rejected because safety study concluded it would increase traffic congestion].) But these

cases do not hold that public entities must present such evidence. Limiting design immunity to those features expressly considered would be tantamount to requiring public entity to address *all conceivable* design features during the approval process. They need not do so. (See *Rodriguez v. Dept. of Transportation* (2018) 21 Cal.App.5th 947, 956 [project engineer's "fail[ing] to consider the particular feature or design" did not vitiate discretionary approval element of design immunity]; *Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 734-735 [establishing discretionary approval did not require the state to make a "detailed showing" about what factors persuaded its engineers not to install a median barrier].)

Appellants also cite authorities involving public entities that could produce no design plan at all, or a plan so rudimentary it could be inferred absent features were not considered. (See, e.g., *Martinez v. County of Ventura* (2014) 225 Cal.App.4th 364, 370 [public entity produced no design plan or shop drawing for "top-hat" style drain struck by injured motorcyclist]; *Cameron v. State of California* (1972) 7 Cal.3d 318, 324 (*Cameron*) [public entity produced no evidence that uneven banking on "S" curve "was part of a duly approved design or plan of the highway"].) These are inapposite because, as stated above, Caltrans produced detailed plans of the relevant stretch of highway.

*3. Substantial Evidence Supports*
*the Reasonableness of the Design*

The third element of design immunity exists "if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (§ 830.6.)

7

"'Any substantial evidence' to establish this third element of the immunity may consist of the following:  [1] Discretionary approval of the design plans themselves [citation]; [2] the expert opinion of a civil engineer as to the reasonableness of the design [citation]; or [3] evidence the design or plan complies with prevailing professional standards [citation]." (*Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 21 (*Menges*).)  "By deciding on a 'reasonableness' standard, the Legislature intended that government officials be given extensive leeway in their decisions concerning public property." (*Ramirez v. City of Redondo Beach, supra,* 192 Cal.App.3d at p. 525.)

Caltrans presented substantial evidence of the highway designs' reasonableness.  Appellants did not dispute the plans used to construct SR-154 were properly approved and complied with prevailing design standards.  Nor did they dispute Caltrans placed deer warning signs east and west of the accident site.  These facts alone are sufficient to show the approved design plans were reasonable.  (*Menges, supra,* 59 Cal.App.5th at p. 21.)

Caltrans also submitted the declaration of Christian Engelmann, a registered civil engineer and traffic engineer, who reviewed collision data collected over eight years in the area of the accident.  He determined none of the 12 documented accidents involved a deer crossing or head-on collision.  Only one involved a cross-centerline collision.  The collision rate was below the statewide average for similar locations.  Over 40 million vehicles had traveled through the accident site during that period.

Engelmann described how Caltrans uses a centerline collision monitoring system to identify locations that warrant further study.  Caltrans then evaluates those locations to determine whether median barriers would improve safety.  The

8

location in this case was not identified by the system. Engelmann opined that no additional deer warning signs were warranted. In addition, Caltrans set the 55 mile per hour speed limit pursuant to Vehicle Code section 22349.[4] He concluded Caltrans reasonably approved all relevant plans for SR-154 before construction and that the overall design was reasonable as designed and at the time of the accident.

Appellants did not dispute any of the facts upon which Engelmann relied. They nevertheless contend on appeal that his opinion lacks evidentiary support because he considered an "unreasonably small area" and "unrealistically tiny" segment of SR-154. Appellants' expert, Edward Ruzak, opined that considering a larger area would have revealed a far greater number of collisions involving wildlife and centerline crossings during the same period.

"Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element. [Citation.] Approval of the plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness. [Citation.]" (*Grenier*, *supra*, 57 Cal.App.4th at p. 941.) "We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if

_____

[4] Vehicle Code § 22349 subdivision (b) provides: "[N]o person may drive a vehicle upon a two-lane, undivided highway at a speed greater than 55 miles per hour unless that highway, or portion thereof, has been posted for a higher speed by the Department of Transportation or appropriate local agency upon the basis of an engineering and traffic survey." Passing lanes are not considered when determining the number of lanes. (*Id*., subd. (b)(2).)

contradicted. [Citations.]" (*Id.* at p. 940.) "That a plaintiff's expert may disagree does not create a triable issue of fact." (*Id.*, at p. 941.)

We conclude substantial evidence showed that a reasonable public employee would have adopted the SR-154 design plans, even without the features and changes appellants contend Caltrans should have considered and included.

*Failure to Warn*

Appellants contend the trial court did not address their separate and independent allegation that Caltrans created a dangerous condition on SR-154 when it failed to adequately warn drivers of deer crossings. Appellants posit that even if design immunity shields Caltrans from liability for a dangerous condition created by a reasonable design decision, it does not protect Caltrans from liability for failure to warn motorists of that condition. They cite the Supreme Court's recent decision in *Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639 (*Tansavatdi*) in support of this argument.[5] We are not persuaded.

*Tansavatdi* held that design immunity did not shield a city from liability for a "concealed trap" created by a bicycle lane that abruptly ended and placed cyclists into traffic. (See *Tansavatdi*, *supra*, 14 Cal.5th at p. 667, citing *Cameron*, *supra*, 7 Cal.3d 318 [design immunity "does not permit it to remain silent when it has notice that an element of the road design presents a concealed danger to the public"].)

The Supreme Court, however, declined to decide the issue presented here: whether design immunity "affect[s] a failure to

_____

[5] The Supreme Court decided *Tansavatdi* after the parties completed briefing. We requested and received supplemental briefs discussing the effect, if any, of the decision on this appeal.

10

warn claim when a public entity *does* produce evidence that it considered whether to provide a warning." (*Tansavatdi*, *supra*, 14 Cal.5th at p. 661, italics added.)  Caltrans produced evidence that its design plans specified the quantity and placement of deer crossing signs.  Appellants did not dispute Caltrans warned motorists of this danger, only that it *did not do so adequately*. The trial court resolved the issue in Caltrans' favor after the parties submitted supplemental briefing and evidence.  As discussed above, we conclude substantial evidence supports the finding.

## DISPOSITION

The judgment is affirmed.  Caltrans shall recover its costs of appeal.

CODY, J.

We concur:

GILBERT, P. J.

YEGAN, J.

11

Jed Beebe, Judge
Superior Court County of Santa Barbara

_____

Patricia A. Law, for Plaintiffs and Appellants.

Erin E. Holbrook, Chief Counsel, G. Michael Harrington, Deputy Chief Counsel, Lucille Y. Baca, Assistant Chief Counsel, and Yuping Lin, for Defendant and Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KIERRA STUFKOSKY et al.<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF TRANSPORTATION,<br><br>Defendant and Respondent. | 2d Civ. No. B317192<br>(Super. Ct. No. 18CV04079)<br>(Santa Barbara County)<br><br>ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION<br>[No Change in Judgment] |

THE COURT:

The opinion in the above-entitled matter filed on October 30, 2023, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

It is further ordered that the opinion in the above-entitled matter be modified as follows:

The first full paragraph on page 1, beginning "Jorgen Stufkosky died in a multi-car accident" is deleted and the following paragraph is inserted in its place:

Appellants Kierra and Merek Stufkosky sued respondent California Department of Transportation (Caltrans) and others

for negligence after their father died in a car accident on State Route 154 (SR-154).  They allege this section of SR-154 constituted a dangerous condition, in part, because Caltrans failed to adequately warn motorists of frequent deer crossings in the area.  (Gov. Code, § 835.1.[6])  The trial court found design immunity shielded Caltrans from liability after the agency produced evidence including design plans that specified the quantity and placement of deer crossing signs.  We affirm the trial court's entry of summary judgment in Caltrans' favor.

There is no change in judgment.

GILBERT, P.J.　　　　YEGAN,  J.　　　　CODY, J.

---

[6]  All unmarked statutory references are to the Government Code.